### SUSIE MONTICUE v. THE STATE.

#### No. 1736. Decided May 10, 1899.

1. **Assault With Intent to Murder—Evidence Sufficient.**

See opinion for facts stated which are held amply sufficient to support a verdict and judgment of conviction for assault with intent to murder.

2. **Improper Statement by Prosecuting Attorney Before the Jury—Practice.**

Where, upon cross-examination of the defendant, the district attorney asked "what her occupation was at the time the offense was committed;" to which defendant objected, and upon the court's remark, "I can't see that the testimony is material," the district attorney said "his object was to prove that the witness was a prostitute;" Held, even if the statement of the district attorney was improper (which is not conceded), it was the duty of counsel for defendant to request the court to instruct the jury to disregard the remark in order to render the matter a subject for revision on appeal.

3. **Defendant as a Witness—Cross-Examination.**

A defendant who voluntarily takes the witness stand is subject to the same rules of cross-examination as every other witness.

4. **Charge of Court—How Considered.**

A charge of court is to be considered in its entirety, and where an error of omission in one paragraph is fully supplied in another paragraph, the omission can not be complained of as error.

5. **New Trial—Newly Discovered Evidence.**

A new trial will not be granted for newly discovered evidence, where it is manifest that the evidence is neither newly discovered nor probably true.

APPEAL from the District Court of Harrison. Tried below before Hon. W. J. GRAHAM.

Appeal from a conviction for assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the material facts shown by the evidence.

Appellant assigns the following errors:

1. The rights of the defendant were prejudiced by the remarks made by the district attorney in the presence and hearing of the jury, and while the defendant was testifying, "that he expected to prove that defendant was a common prostitute," as shown by defendant's bill of exceptions number 1.

2. The court erred in its charge to the jury in this: the court failed and omitted to charge the jury the law on murder and manslaughter.

3. The court erred in paragraph 3 of its charge, which said paragraph 3 is as follows: "The use of any unlawful violence upon the person of another with the intention of injuring him, whatever be the means or the degree of violence used, is an assault and battery. Any attempt to commit a battery or any threatening gesture showing in itself or by * * * accompanying it an immediate intention, coupled with the ability to commit a battery, is an assault."

4. The court erred in its charge to the jury in this: the court did not charge the jury that in order to constitute the offense of an assault with the intent to commit murder, that to constitute said offense there must have existed in the mind of the defendant at the time of committing the assault the specific intent to kill Oliver Smith.

5. The verdict of the jury is contrary to the evidence, in this: the evidence did not show that defendant was guilty of any offense of a higher grade than aggravated assault.

6. The court erred in overruling defendant's amended motion for a new trial, and especially that portion showing the newly discovered testimony of George Calloway and George Jordon.

*W. C. Lane* and *C. C. Hines*, for appellant.

*John B. Carter*, District Attorney, and *Robt. A. John*, Assistant Attorney-General, for the State, each filed an able brief.

BROOKS, JUDGE.—Appellant was convicted of assault with intent to murder, and her punishment assessed at two years confinement in the penitentiary.

Appellant's first assignment of error is "that the court erred in failing to grant a new trial because the jury found defendant guilty contrary to the charge of the court, in that the jury found defendant guilty of an assault with intent to murder, when the testimony will not support a conviction for more than an aggravated assault." The testimony, in brief, discloses: That appellant became angry at reports sup-

posed to have been circulated by the prosecuting witness, Oliver Smith, reflecting somewhat upon her. That she went to the house where Smith was cooking breakfast, called him out, and asked him why he was interfering with other people's affairs. Smith denied doing so. Thereupon appellant cursed him and threw rocks at him. Smith threw rocks back, and there is some testimony going to show that the rocks struck her skirts. Thereupon appellant hallooed to a party to bring her a pistol, which was refused; and appellant returned to her own home, got a pistol, and came to the house where the prosecuting witness, Smith, was, found the doors all closed, and then tried to force an entrance. Failing in this, appellant started away from the house, when witness Smith opened the door. Thereupon appellant stated that she would shoot his heart out, and leveled the pistol at him,—holding the same in both hands,—and fired. The ball struck a post in line between appellant and prosecuting witness, Smith, who was standing in the door. Appellant's testimony is in substance as indicated above, as far as the first part of the row is concerned, but says that she did not fire the pistol at Smith, but that the same went off accidentally; that the pistol was not pointed towards him, nor did the ball hit the post between her and witness Smith. The fact that the ball hit the post, however, is established by several witnesses. It was established by three or four witnesses that she shot directly at Smith. We think the evidence, as briefly stated, shows that the jury were amply warranted in finding the verdict they did.

Appellant's second assignment complains of the action of the district attorney, in this: "The district attorney asked defendant, when she was on the witness stand on her own behalf, on cross-examination, this question: 'What was your occupation at the time the offense was committed?' Defendant objected on the ground that it was immaterial, and the court held that it was immaterial, whereupon the district attorney stated that his object in asking the question was that he expected to prove appellant was a common or public prostitute. All of which occurred in the hearing and presence of the jury." The court appends to this bill the following: "This bill is approved, with the statement that when the question was propounded, and the objection urged to it, I said, 'I can't see that the testimony is material,' and my manner indicated (as I was) that I was in doubt as to the correctness of my ruling. Whereupon the district attorney rose and said that his object was to prove that witness was a public prostitute. I said, upon exception being taken by defendant, that the statement was unnecessary so far as the ruling was concerned upon the admissibility of the evidence; that it was an authority, if the district attorney had one, that I wished, to relieve me of my doubt. I then addressed the jury, and told them not to consider the statement of the district attorney, and they nodded their heads in assent to my direction." Even if the statement of the district attorney was improper (which we do not concede), it was the province of defendant's counsel to request the court to instruct the

jury to disregard the remarks. Lancaster v. State, 36 Texas Crim. Rep., 16; Carver v. State, 36 Texas Crim. Rep., 552; Wright v. State, 37 Texas Crim. Rep., 146; Gilmore v. State, 37 Texas Crim. Rep., 178. Appellant, having voluntarily taken the witness stand, was subject to the same rules of cross-examination as any other witness. Quintana v. State, 29 Texas Crim. App., 401; Morales v. State, 36 Texas Crim. Rep., 234; McCray v. State, 38 Texas Crim. Rep., 609; Ingersol v. Mc-Willie (Texas Civ. App.), 30 S. W. Rep., 60; Coal Co. v. Lawson (Texas Civ. App.), 31 S. W. Rep., 849.

Appellant's third assignment is "that the court erred in failing to charge the jury the law of murder and manslaughter." And her fourth assignment complains of the third paragraph of the court's charge, to wit, " 'The use of any unlawful violence upon the person of another,' etc., and ending with the words, 'coupled with the ability to commit an assault, is an assault.' " We have examined the court's charge in the particular complained of, and find that it is substantially and almost a literal copy of the statute, except section 3 of article 592 of the Penal Code, defining the term "coupled with an ability to commit;" and this is properly presented in section 9 of the charge, upon the law of simple assault. When the charge is considered as an entirety, we do not think there is any error in the charge as complained of. Jarnigan v. State, 6 Texas Crim. App., 465; Boles v. State, 18 Texas Crim. App., 422.

Appellant's fifth assignment complains of the action of the court "in not granting a new trial for want of the testimony of George Calloway, by whom she expected to prove, and will prove upon another trial of said cause, that he (said witness) told Oliver Smith (the alleged assaulted party), and after said alleged assault was made, that defendant did not intend to shoot him, and that the pistol was discharged accidentally; and he said, 'I know that, but am going to put her in the penitentiary, even though I go too, for perjury, myself.' " Appellant insists that she did not know of the above conversation until after her trial and conviction. We find from an inspection of the motion and counter motion for new trial that the witness George Calloway filed an ex parte affidavit, in which he states that appellant had known for a year what his testimony was. Furthermore, all the witnesses in the case testify that George Calloway was not present at the scene of the shooting, and did not know anything about it. It follows from the above that the testimony of said Calloway was not newly discovered, and not probably true; hence, not ground for new trial. Whitfield v. State, ante, p. 14; Houston v. State (Texas Crim. App.), 47 S. W. Rep., 468; Sarvis v. State, Id., 463; Willson Crim. Stats., art. 817, subdiv. 6.

Appellant's sixth assignment urges that a new trial should have been granted because of the want of the testimony of George Gordon, who heard the conversation between the witness Calloway and Oliver Smith. For the reasons stated, we do not think this is a ground for granting a new trial.

There is no merit in appellant's seventh assignment. The very issues. raised were submitted in the court's general charge, and it is not subject to the criticism urged. No error appearing, the judgment is in all. things affirmed.

*Affirmed.*