## JOHN CAMPBELL V. THE STATE.

### No. 488.   Decided April 13, 1911.

### Rehearing Granted June 14, 1911.

**1.—Assault to Rape—Recognizance—Dismissal—Reinstatement.**

Where the appeal was dismissed because the recognizance was defective in not stating the amount of punishment assessed against the appellant, but he later filed a new recognizance within proper time, the case will be heard on its merits.

**2.—Same—Bill of Exceptions—Practice on Appeal.**

Where bills of exception were not in the record the error assigned in them can not be considered.

**3.—Same—Evidence—Leading Question—Child Witness.**

When a person is of immature years and laboring under excitement, etc., leading questions may be permitted by the court; and where the prosecutrix in trial for attempt to rape was only thirteen years old, was crying and under excitement, there was no error in permitting leading questions to be asked.

**4.—Same—Hearsay Evidence.**

Upon trial of assault to rape there was no error in not permitting certain witnesses to testify as to what a third party, who was not a witness, had said to them on different occasions when neither the defendant nor prosecuting witness were present.

**5.—Same—Letters—Evidence.**

Before a witness who has read a letter will be permitted to testify as to its contents, some reason must be given for its nonproduction; and where no such reason was given in trial of assault to rape there was no error in not permitting witnesses to state the contents of a certain letter to defendant.

**6.—Same—Evidence—Credibility of Witness.**

Where, upon trial of rape, the defendant had sought to impeach the prosecutrix by her mother as to a conversation between them with reference to the alleged rape, there was no error in permitting the said mother to testify to this conversation in substance as the prosecutrix had detailed it.

**7.—Same—Argument of Counsel—Practice.**

It is proper for the court to confine the argument of counsel to the evidence adduced on trial and to instruct the jury accordingly.

**8.—Same—Argument of Counsel—Response.**

Where the defendant's counsel had first referred to extrinsic matters not in evidence, he could not complain of State's counsel's remark in direct response to such references; especially where no special charge was requested, and there was no error. Following Levine v. State, 35 Texas Crim. Rep., 649, and other cases.

**9.—Same—Evidence—Defendant as a Witness—Cross-Examination—Credibility of Witness.**

While a defendant as a witness is subject to the same cross-examination
Vol. LXII Crim.—36.

as any other witness, he can not be cross-examined on a matter about which he has not been indicted, and the question does not indicate a state of affairs for which he could be indicted, for the purpose of affecting his credibility; and the State must accept his answers to such questions and will not be permitted to impeach him.   Following Brittain v. State, 36 Texas Crim. Rep., 410, and other cases.

**10.—Same—Evidence—Case Stated.**

Where the testimony brought out on cross-examination of defendant as a witness could only show that he was not a moral man, perhaps, a libertine, and thus create a prejudice in the minds of the jury against him on a trial of assault to rape, the same was inadmissible, and could not affect his credibility as a witness.

Appeal from the District Court of Hunt.   Tried below before the Hon. R. L. Porter.

Appeal from a conviction of aggravated assault; penalty, a fine of $250 and six months confinement in the county jail.

The opinion states the case.

*Sam D. Stinson,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—On insufficiency of recognizance:   May v. State, 40 Texas Crim. Rep., 196.

DAVIDSON, Presiding Judge.—The assistant attorney-general has filed a motion to dismiss the appeal because the recognizance is defective.   The recognizance does not state the amount of the punishment assessed against appellant as required by article 887, Code of Criminal Procedure.   The recognizance being defective, the motion is sustained.   See May v. State, 40 Texas Crim. Rep., 196.

The appeal is dismissed.

*Dismissed.*

ON REHEARING.

June 14, 1911.

HARPER, Judge.—Appellant was indicted for assault with intent to rape, and was convicted of an aggravated assault, and his punishment assessed at a fine of $250 and six months imprisonment in the county jail.

This case, at the last term of this court, was dismissed because of insufficient recognizance.   Appellant within the time permitted by law filed a new recognizance, and this case has been pending since said date.   The testimony for the State would show that on or about the 30th of April, 1909, appellant, while his wife was confined to her bed, instructed his stepdaughter, Lizzie Little, a thirteen-year-old girl, to go to the smoke-house and get some molasses for dinner.   She says he followed her in the smoke-house, closed the door, made indecent proposals to her, and attempted to pull up her dress.   That he kept her in the smoke-house about half an hour, when those in the house

became uneasy about the length of time she was staying, called her, and at last her half-brother came for her, when appellant opened the door and let her go. Her mother's brother shortly thereafter came for her, and without the knowledge or consent of her stepfather (appellant) carried her away to his home. She is corroborated in some details by a lady staying in the house at the time.

Appellant denies any improper conduct, or that he ever sought to rape his stepdaughter, and contends that his treatment of her had always been kind, and some of the neighbors testify that appellant treated his stepdaughter as well as he did his own children. There was a great deal of impeaching and corroborative testimony, but the above presents the issue in the case.

1. Bills of exception Nos. 1, 2 and 4 are not in the record; therefore the matters assigned on them as a basis can not be considered.

2. In bill of exceptions No. 3 complaint is made of the State being permitted to ask the prosecuting witness the question: "Did he say anything about giving him some?" The witness was but a child, and the record shows she was crying, and the State had in a measure to coax her to give testimony. Taking into consideration the age of the child, and the circumstances of the trial, we do not think the court erred in permitting the question to be asked, even though it is leading in its nature. When a person is of immature years, and laboring under excitement, etc., leading questions may be permitted by the court, and this is a matter left largely in the discretion of the court trying the cause. Harris v. State, 37 Texas Crim. Rep., 441.

3. The court did not err in not permitting the witnesses to state what Ephraim Poindexter had said to them on different occasions when the defendant or prosecuting witness were neither present. Poindexter was not a witness in the case, and neither the State nor defendant had sought to make him a witness so far as the record discloses. Neither was there any error in not permitting witnesses to state the contents of a letter from Poindexter to appellant. The letter was the best evidence, and in the absence of proof of its destruction or loss, contents thereof could not be proven by a witness who claimed to have read it. This also applies to the letter from Mrs. Poindexter, as complained in bill No. 7. Before a witness who has read a letter will be permitted to testify as to its contents, some reason must be given for its non-production. So far as the record discloses, these letters were in the possession of defendant, and they would be the best evidence.

4. Complaint was made about the admissibility of a conversation had between prosecuting witness, Lizzie Little, and Mrs. T. D. Campbell, in which conversation she in a few days after the occurrence had detailed to Mrs. Campbell the transaction in substance as she testified to on the trial of this case. The defendant had sought to impeach Lizzie Little by her mother in regard to this matter, and this rendered the testimony of Mrs. Campbell admissible. Kimball v. State, 37 Texas Crim. Rep., 230.

5. Complaint is made in bill of exceptions No. 14 that the court instructed the jury, "that they would pay no attention to and wholly disregard any statement by counsel about any letter, except the letter of Mrs. Gould, and there was no other letter in evidence." The court, in approving this bill, says defendant's attorney had been discussing before the jury contents of letters not in evidence. It is proper for the court to limit the argument to the evidence adduced on the trial, and it is proper for him to so conduct the case as to keep from the jury all matters not admitted in evidence, and to instruct them not to consider such matters if counsel inadvertently or intentionally seeks to bring such matters to their attention.

6. Appellant also complains of the argument of counsel for the State, when he said: "Gentlemen of the jury: One of the best doctors in this county examined Mrs. John Campbell today, and reported to this court that she was able to come to court and testify; two officers of the court took her from her room and brought her to the court in a rocking chair, and paid the expenses of bringing and taking her back to the house." The court, in approving this bill, says: "When this case was called for trial defendant made a motion for continuance, setting out as one of the grounds of same that he expected to prove some very material facts by his wife, Mrs. John Campbell, and that she was unable to attend court on account of her physical condition. The motion was overruled, and during the trial of the case I sent a physician to the home where Mrs. Campbell was stopping to examine her and see whether she was able to be brought to court. He reported that she was not confined to her bed and was able to be brought to court. Whereupon I sent two deputy sheriffs for her and had her brought to the courthouse in a carriage. When she testified in the case I had her taken home. One of the attorneys for the defendant, in his argument, criticised the officers of the court very severely for having the woman brought to court, among other things saying, 'Defendant preferred to take his chances before a jury without the testimony of his wife, rather than to drag her out of a sick bed to testify for him.' 'The officers of this court had gone to the woman's sick bed and dragged her to the courtroom when they knew that she was unable to be brought out.'" When defendant's counsel discusses matters outside of the record, they can not be heard to complain when the court permits opposing counsel to reply. All of this was improper in the absence of any testimony before the jury as to Mrs. Campbell's condition, but the defendant having first referred to these extrinsic matters, he ought not now be permitted to complain when the objectionable remarks were in direct response to his criticisms. In addition, no special charge was requested asking the court to instruct the jury not to consider such argument, and in the absence of a requested instruction we will not review the matter further, and hold it presents no error for which the case should be reversed. Levine v. State, 35 Texas Crim. Rep., 647, and cases there cited.

7. There is a bill of exceptions in the record that presents a serious question, and one which has been discussed in a number of our decisions, and that is, when a defendant takes the stand to testify in his own behalf, upon what matters and to what extent may he be cross-examined on matters affecting his credibility as a witness? It seems well settled by all of our decisions that he is subject to the same cross-examination as any other witness. (Monticue v. State, 40 Texas Crim. Rep., 528; Hutchins v. State, 33 Texas Crim. Rep., 299, and cases cited.) And that he may be asked about being indicted or convicted of offenses involving moral turpitude or of the grade of felony, and be discredited and impeached by proof of conviction of such offenses, if recent. (Hutchins v. State, 33 Texas Crim. Rep., 299.) But the question here presented is, can he be cross-examined on a matter about which he has not been indicted, and the question does not indicate a state of affairs for which he could be indicted, for the purpose of affecting his credibility? It is well settled by the decisions of this State that, if questioned about such matters, the State must accept the answer to such questions, and will not be permitted to impeach him. (Brittain v. State, 36 Texas Crim. Rep., 406, and authorities there cited.) In this case the State was permitted to ask the following questions on cross examination, and the witness required to answer them, as shown in bill of exceptions No. 9: "Q. On one occasion recently, when you were drinking, didn't you come up on the train with a young lady, and didn't you introduce yourself to her as a young man, and didn't you call on her that night? A. When did you say that was? Q. Sometime in recent years. Is it not a fact? A. How is your question? Q. You say you have a fondness for women when you are not drinking? A. I like ladies; I have a respect for ladies. Q. Now, when you get to drinking, don't you have a special fondness for them? A. I can't say that I have; I always try to treat ladies with courtesy wherever I meet them. Q. Always do? A. I try to. Q. Now, the question is this: Coming on the train with a young woman who was claiming to visit a family here in Greenville, and you introduced yourself as the governor's brother, as a single man, and didn't you make a date to call on her that night, and did you not call on her that night? A. I met a young lady on the train, Ed McGuffin and I; she requested—we were setting behind her—and she requested if you gentlemen live in Greenville; we was coming up from Shreveport, Ed and I; I don't know where she got on the train. We had been to Shreveport, and we had been out in the smoker, and walked back in the car where the lady was, and this lady—we set down behind this young lady, and when the train came into Greenville she turned and asked, 'do you gentlemen live in Greenville?' and Ed says, 'We do;' and she says, 'Do you know Dr. Milner?' and Ed says, 'Yes, I do;' and she says, 'Do you know where he lives?' and we says, 'Yes, if he has not moved to his new residence,' and I says, 'I will see if he has moved when we get off, and secure a cab and send you out there,' and she

walked into the depot, and Ed says, 'I will run around there and see the cabman, and learn whether or not he has moved out' to the new residence.' We went and secured a cab and put the young lady in the cab, and Ed and I went to the Beckham hotel and went to bed; and the young lady in the meantime said that she came to see some relative of hers that was seriously sick, and the lady lived on ⸢—— street, and said she was seriously sick and they were expecting her to die, and she up and asked my name and I just told her it, and the next night I had occasion to be in that part of town and just stopped and inquired and conversed with the young lady a little while. I never did tell her that I was not married."

In the case of Carroll v. State, 32 Texas Crim. Rep., 431, this court says: "While the Code declares that one may impeach his own witness in any way except by proving his bad character (Code Criminal Procedure, article 755), it is silent as to the methods by which one may attack the credibility of a witness offered by the opposite party. It simply refers us to the rules of evidence known to the common law for guidance. Code Criminal Procedure, art. 725. Turning to the source, we find that of the various modes of impeaching a witness this alone has been the subject of much opposition and discussion; that is, whether a witness can be compelled to answer a question degrading him, collateral to the main issue but relevant to his credit. In other methods of impeachment, the question is as to the application of the rule. In this the existence of the rule is denied. It seems, however, to be conceded that, if the question is relevant to the main issue in the case, the witness upon cross-examination is bound to answer, however degrading it may be to him. It is where the evidence is not relevant to the issue, but only goes to affect his credit, that the authorities can not be reconciled. 1 Best on Evid., 130; 1 Greenl. on Evid., sec. 459; Whart., Crim. Evid., 8th ed., 474.

"We may therefore follow the authorities whose reasoning appeals strongest to our judgment, and adopt that rule which tends to elucidate the truth, which is the object of all rules of evidence.

"Now, while it is true that the question 'has never been solemnly settled,' as stated by Mr. Greenleaf (1 Greenl. on Evid., sec. 459), yet eminent judges, at nisi prius trials, began at an early day to permit such questions to be asked, and compelled the witness to answer them. Whart., Crim. Evid., 474. Lord Eldon, in speaking of this practice, thus states the law in his day: 'A party can not be called upon to criminate himself; it used to be said a party could not be called on to discredit himself, but in modern times courts have permitted questions, to show from transactions not at issue, that the witnesses are of impeached character, and therefore not so credible.'

"So that it would seem that, though the olden authorities were against the practice (1 Phillips on Evid., 289, 294), yet the current of authority soon changed in England and America. Indeed, in his Digest of the Law of Evidence, Sir James Stephen states the rules of

cross-examination as follows: 'Where a witness is cross-examined, he may be asked any question which tends (1) to test his accuracy, veracity or credibility, or (2) to shake his credit, by injuring his character. He may be compelled to answer any such question, however irrelevant to the facts in issue, and however disgraceful to himself, except where the answer might expose him to a criminal charge.' Willson's Crim. Stats., sec. 2511. This character of cross-examination is permitted upon the theory that, where a man's life or liberty depends upon the testimony of another, it is of the highest importance that they whom the law makes the exclusive judges of the facts and the credibility of the witnesses should know how far the witness is to be trusted. They ought to know his surroundings and status, so as not to give to one belonging to the criminal class the same credit as he whose character is irreproachable. If, therefore, it should appear on cross-examination that the witness has a previous criminal experience, or spent a part of his life in jail (Real v. The People, 42 New York, 270; Thompson on Trials, 458; 1 Greenleaf on Evidence, 455), or was convicted, or has suffered some infamous punishment, or had been in jail on a criminal charge (1 Best on Evid., 130), it would tend to shake or impair his credit, and the jury should have such information. While it may seem hard to compel a witness to commit perjury or destroy his own standing before the court, it would seem absurd to place the feelings of a profligate witness in competition with the substantial rights of the parties in the case.

"But it is to be remembered, and all the authorities unite in the statement that the examination must be kept within bounds by the court; that the question should only be permitted where the ends of justice clearly require it, and the inquiry relates to transactions comparatively recent, bearing directly on the present character of the witness, and is essential to the true estimation of his testimony by the jury. 1 Greenl. on Evid., sec. 459; Whart., Crim. Evid., secs. 474, 476; Taylor on Evid., secs. 1314, 1315. It should be the care of the trial judge to confine the interrogatory to matters coming within the said limitations, and promptly suppress all inquiry into matters not recent nor relevant to credit, otherwise the witness box would become a source of scandal and an offense. It is also to be observed that when a witness is asked a question which tends to disgrace him, and answers the question, the cross-examining party is, in general, bound by the answer, if collateral to the issue and only going to the credit of the witness. For to admit contradictory evidence would raise collateral and independent issues not relevant to the main question. 1 Greenl. on Evid., 455; 2 Phil. on Evid., 950; Best on Evid., 200."

The evidence above shown to have been elicited, as we see it, could only go to prove that appellant was not a moral man, perhaps a libertine, and thus create a prejudice in the minds of the jury against him. Courts, in admitting cross-examination of a witness for the purpose of affecting his credibility, should be careful to limit that examination

to matters alone which would affect his credibility, and when a defendant is on the stand as a witness, not permit a cross-examination on extraneous matters which do not affect his credibility as a witness, but instead, have a tendency to only create a prejudice against him as being an immoral man. We think the court erred in permitting the State to cross-examine the witness on these matters and attempt to create the impression that he was, perhaps, a libertine. He was on trial for rape, and while a libertine is an immoral man, yet it can not be said that every one of them would go to the extent of raping a female, or that he is unworthy of belief as a witness.

It is needless to discuss the motion for a continuance in view of the disposition of the case. The judgment is reversed and the cause is remanded.

*Reversed and remanded.*