JOHN CURRY v. THE STATE.

No. 5364.   Decided June 18, 1919.

1.—Murder—Evidence—Cross-Examination—Argument of Counsel—Invited Error.

Upon trial of murder, there was no reversible error in the instant case, in permitting State's counsel's cross-examination of the defendant as to the trial of his son, which matter had been brought out by the defendant. Nor was there any reversible error in the argument of State's counsel in response to the argument of defendant's counsel upon this phase of the case, although the same would otherwise have been objectionable and improper, and except under the rule of invited error the same would be reversible error.

2.—Same—Evidence—Bill of Exceptions.

Where the complaint to the impeachment of defendant's witness was destroyed by accepting the qualifications of said bill by the trial judge, there was no reversible error.

3.—Same—Conspiracy—Charge of Court—Burden of Proof.

Where, upon trial of murder, the evidence raised the issue of conspiracy and the court submitted a proper charge thereon, which did not place the burden of proof on the defendant as contended by him, there was no reversible error.

**4.—Same—Invited Error—Argument of Counsel—Rule Stated.**

The rule that remarks of State's counsel, in response to those made by the attorney for the accused, are not to be made by the accused, the basis of available complaint, is one that this court has recognized and applied with uniformity, and is neccessary in order to enable the trial judge to control the trial. Following Fluewellian v. State, 59 Texas Crim. Rep., 334, and other cases.

Appeal from the District Court of Smith. Tried below before the Hon. J. R. Warren.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Hanson & Butler* and *N. A. Gentry* for appellant.—On question of argument of Counsel; Jenkins v. State, 93 S. W. Rep., 726; Rodriques v. State, 58 Texas Crim. Rep., 275, 125 S. W. Rep., 403; McKinley v. State, 52 Texas Crim. Rep., 182, 106 S. W. Rep., 342; Askew v. State, 54 Texas Crim. Rep., 414, 113 S. W. Rep., 287; Battles v. State, 53 Texas Crim. Rep., 202, 109 S. W. Rep., 195.

*E. A. Berry*, Assistant Attorney General, for the State.

MORROW, JUDGE.—The appeal is from a conviction for murder with penalty fixed at thirty-five years confinement in the penitentiary.

The parties to the tragedy were negroes. The deceased, Richard Norman, lived with his mother, Della Towns, about a quarter or half mile from the home of appellant, in which there resided with him two sons, Proctor and William. A difficulty occurred in the afternoon preceding the homicide in which difficulty Proctor and William Curry, and deceased took part. In the course of this difficulty Della Towns took a gun away from Proctor Curry and subsequently appellant came for the gun, and Della Towns refused to deliver it to him, and a quarrel took place, touching which the evidence was conflicting, but deceased was present. Appellant claimed deceased threatened to kill his sons.

That night appellant, his son William and a party named Smith, went to the residence of Mr. Gary, and he, at appellant's request, telephoned an officer requesting that he come and arrest deceased and stop the trouble. The officer declined to come then but said he would do so next morning. Deceased while sitting in his mother's home was shot about forty minutes after the telephone conversation took place. One shot was fired through an augur hole in the door. Circumstantial evidence was relied on by the State.

The theory of appellant, and his testimony, was that after this telephone conversation, he and Smith and William Curry returned to the home of appellant; that in returning they became separated and he and Smith reached the home some fifteen minutes before William

Curry arrived there, and that during this fifteen minutes the shot which killed the deceased was fired. This theory was supported by the testimony of members of the appellant's family, and from it the hypothesis was presented that William Curry killed the deceased after he had separated from the appellant and Smith, and that in doing Appellant, testifying as a witness, described the transaction in which so he acted alone. The State's theory was that appellant and William Curry were together at the time of the homicide and that if appellant did not fire the shot that he was guilty as a principal offender. he had communicated with the constable and his return to his home, stating that his route from the residence of Gary, where he went to telephone took him along the road which passed in the vicinity of the home of the deceased. He said, in this connection: "We did not all go home together. Smith and I were together and we missed William in a little swag about 150 yards from Della Towns' house. Nothing was said between me and William and Smith, or any of the boys about stopping there. I was in front and Smith and William were behind me. I don't know just where William stopped. I don't know where he stopped. I missed him because he and Sam had quit talking and I looked back and saw Sam. They had both been behind me. I missed William, and Sam Smith and I continued straight home. He gave the names of the persons who were at home when he arrived there and these were used as witnesses to corroborate him on his statement that he and Smith reached his house prior to the time William returned. Continuing, he said: "I heard the gun fire that it is now supposed killed the deceased. . . . I was in my house then, when I heard that gun fire. I suppose at that time I had been home about ten or fifteen or twenty minutes after I heard that gun fire before my son William Curry come home. . . . I did not know then anything about the killing of Richard Norman." On cross-examination counsel for the State asked appellant several questions, among them: "Sam Smith did not do this killing because he went on home with you and was there when you heard this gun fire, wasn't he? A. Yes, sir." Further in answer to questions, he said:: "I was not close enough to hear voices at Della Towns. I did not hear negroes squalling down there. There was so much hollering that I don't know whether they were crying or not, but it seemed to me I heard a noise. I didn't ask William Curry what the noise was about. I did not go to Della Towns that night." On re-direct-examination he testified that William Curry was dead; that he had been informed by the penitentiary authorities that he was dead. His counsel asked: "What did William go to the penitentiary for?" to which he replied: "A. Why, that gentleman (meaning the district attorney) convicted him here for killing Richard Norman." State's counsel, on re-cross-examination asked the following question: "Mr. Gentry proved by you that I sent Will to the penitentiary for killing this same boy—

you were sitting over there and heard your boy swear in this case, didn't you? A. No Sir . . . I was not in here while he was testifying." The court at that time declined to allow the district attorney to make inquiry of what William Curry had testified on his trial, but subsequently, when he was recalled to prove the size shoe he wore, and after cross-examing him on that subject, counsel for the State said: "I want to ask you some more about the trial of your son, that you said I sent to the penitentiary—you knew that Will denied the killing, don't you? A. No, sir. Q. And don't you know he claimed you fired the shot?" On objection, the court stated that its admissibility would depend upon whether the appellant knew. The question was repeated: "Don't you know he claimed and swore that you fired the shot that killed this boy? A. No sir, I do not know it, because I wasn't in here—this court debarred me to be in here."

A bill of exceptions is presented to the action of the court in permitting counsel to ask the appellant, under the circumstances, these questions. The court in explaining the bill states, "that in view of the testimony on re-direct examination, that it was his judgment that it was permissible for the State to draw out the testimony which was sought by the questions propounded, but as it developed that appellant did not hear William testify, the matter was pursued on further."

In another bill it appears that the district. attorney, in closing the argument to the jury, said that "on the trial of Will Curry, Will Curry testified that John Curry killed the deceased Richard Norman." The appellant made objection which was sustained by the court and the court gave the jury a special charge requested by the appellant to the effect that the remarks were improper and were to be disregarded by the jury. Qualifying the bill touching this argument, the court says that it was invited by an argument of appellant's counsel who stated, in substance, that "the State ought to be satisfied as the son of defendant had in this very court confessed in his trial that he killed Richard Norman and had been sent to the penitentiary therefor." That the examination of the appellant by the State's attorney was an improper one, we think, is obvious. The appellant was not present at the trial of his son, and, therefore, could not have heard him testify, and even if he had been present and heard him testify that the appellant killed deceased, the declaration being in court, and made by the defendant on trial in order to exculpate himself, was not under such circumstances as that the failure of the appellant to deny it would be such silence as would justify its introduction against him as an admission or confession. However, the testimony of appellant that his son William had been sent to the penitentiary for killing deceased, was also improper, and was admitted over the protest of State's counsel. It was doubtless necessary that the appellant give

some explanation before the jury as to why his son was not present at the trial, but this could have been fully fulfilled by the statement that he was dead. The further proof that he had died in the penitentiary and had been sent there under conviction for killing the deceased was doubtless desired by the appellant for the purpose of its effect upon the jury, and in view of this inquiry and testimony, we are of opinion that the bill of exceptions relating to the questions asked by the district attorney does not show an error authorizing a reversal of the case. His statement to the jury in argument that William Curry testified that John Curry killed deceased, Richard Norman, was improper, and except for the fact that as qualified the bill of exceptions shows it to have been invited, we would regard it as reversible error, although the court had instructed the jury that it was improper and not to be considered. We think under the facts of the case it was such a statement and bore so directly upon the vital issue that it was not susceptible of withdrawal by special charge. From the qualification, however, it seems that the appellant's counsel had made in his argument a statement out of the record that William Curry had confessed on his trial that he killed the deceased. Thus qualified, it appears that in making the statement complained of the district attorney in going out of the record was following the lead of appellant's attorney, and that under the rule of invited argument we are not authorized to reverse.

The bill complaining of the impeachment of appellant's witness by proof by her, on cross-examination, that she was unmarried and was the mother of a child, is destroyed by the accepted qualification of the trial judge showing that the evidence was introduced without objection

We do not think the charge on conspiracy was unauthorized, nor do we find merit in the contention that it assumed that William Curry killed deceased. That question of fact apparently was fairly left to the jury. We are referred to no authority supporting appellant's attack on the court's charge, and our examination of it has disclosed to us no serious defect in it. It embodies the law of principals, both on the theory that appellant, being present and knowing the unlawful intent of William Curry, acted together with him in the homicide, and on the theory that he advised William Curry to kill deceased and was present at the time he was killed.

Finding no error justifying a reversal of the judgment, it is in all things affirmed.

*Affirmed.*

ON REHEARING.

June 18, 1919.

MORROW, Judge.—We are asked to review our decision that under the rule of invited argument we were not authorized to reverse the case.

The district attorney in his argument said: "On the trial of William Curry, Will Curry testified that John Curry killed the deceased, Richard Norman." The court, at the request of the appellant, instructed the jury that this was improper and must be by them disregarded, and in qualifying the bill, the court said: "One of the attorneys representing the defendant, in his argument to the jury, stated in substance that the State ought to be satisfied in this case. The district attorney has already sent defendant's son to the penitentiary in this very court, who confessed in his trial that he killed Richard Norman, and the district attorney in making the remarks complained of was answering the above argument." Both the statement of the attorney for the appellant, as well as that of the district attorney were unauthorized. There was no evidence on the trial that William Curry testified that appellant shot deceased, nor that William Curry confessed that the shooting was done by him. The trial judge was not a party to either statement going before the jury, but on the contrary did what he could to repair the injury by instructing the jury not to consider the remarks of the district attorney. As stated in the original opinion, if the remarks of the district attorney had not been made in response to those made by the appellant's attorney, and upon the same subject, we would regard the matter as reversible, notwithstanding the court's effort to induce the jury not to consider it. The rule that remarks of the State's counsel, in response to those made by the attorney for the accused, are not to be made by the accused the basis of available complaint, is one that this court has recognized and applied with uniformity. It has been deemed necesssary in order to enable the judge to control the trial. Its abrogation would license the attorney for the accused to bring before the jury matters not introduced not admissible in evidence, and the fact that a hardship may result in extreme cases, would not justify the court to make exceptions, the effect of which would be to destroy the rule. Many examples of its application can be found in Michie's Digest of Texas Crim. Cases, vol., 1, p. 447, among which we mention the following: Fluewellian v. State, 59 Texas Crim. Rep., 334; Campbell v. State, 35 Texas Crim. Rep., 160, in which, referring to a remark made by the district attorney to the effect that during all those six long years, and all the trials that were had during that time, no jury ever turned the defendant loose. Judge Hurt, in

writing the opinion, said: "In answer to this, it is sufficient to say that these remarks were made in response to the remarks on the same subject by appellant's counsel in his speech. Both were outside of the record, but the remarks of the district attorney were pertinent to and explanatory of the charge made by appellant's counsel as to former trials of the case. See also Johnson v. State, 45 S. W. Rep., 901; Wright v. State, 60 Texas Crim. Rep., 385, 131 S. W. Rep., 1070; Jackson v. State, 49 Texas Crim. Rep., 215; Baker v. State, 4 Texas Crim. App., 223; Leggett v. State, 65 S. W. Rep., 516; Brantley v. State, 42 Texas Crim. Rep., 293; Campbell v. State, 62 Texas Crim. Rep., 561, 138 S. W. Rep., 607; Smith v. State, 21 Texas Crim. App., 277; Railey v. State, 58 Texas Crim. Rep., 1; Williams v. State, 51 Texas Crim. Aep., 352.

The motion for rehearing is overruled.

*Overruled.*