### FRANK ASKEW v. THE STATE.

No. 553.     Decided April 19, 1910.

**1.—Murder—Evidence—Absent Witnesses—Former Trial—Argument of Counsel.**

Upon trial of murder it was reversible error to permit State's counsel on cross-examination of defendant to show that some of the State's witnesses who had attended. a former trial and testified for the State had not been present at any other term of the court when the case was called and had never testified again in the case, and that defendant had not tried to locate them or take their depositions. It was also error to permit State's counsel to argue this matter before the jury.

**2.—Same—Evidence—Unwritten Confession—Statutes Construed.**

Upon trial of murder where it appeared that the alleged confessions of defendant admitted in evidence were not reduced to writing, etc., the same was reversible error, although the law requiring confessions to be in writing, etc., was enacted after the alleged confessions were made.

**3.—Same—Threats—Charge of Court.**

Where, upon trial of murder, threats by the deceased against the defendant were in evidence, the court should have pertinently applied the law of threats in his charge to the jury.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Templeton, Craddock, Crosby & Dinsmore* and *C. E. Sheppard,* for appellant.—On question of admitting alleged confessions of defendant: Phoenix Insurance Co. v. Shearman, 43 S. W. Rep., 930; Ex parte Boyd, 50 Texas Crim. Rep., 309, 96 S. W. Rep., 1079; Sheppard v. State, 1 Texas Crim. App., 522; article 790, Code Crim. Procedure, as amended.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter and given two years confinement in the penitentiary.

This is the third appeal of this case. The first appeal is found reported in 47 Texas Crim. Rep., 362, and the second appeal is found in 54 Texas Crim. Rep., 414. We deem it unnecessary to go into a statement of the case further than shown by the former appeals, and such as may be involved in the disposition of the matters presented. We shall content ourselves in following the brief of appellant in reviewing the questions presented for discussion.

1. The first error complained of is found in bill of exception No. 2, practically as follows: While appellant was testifying in his own behalf, and while he was being cross-examined, the district attorney was permitted to elicit from him the following facts: That on the night of the killing Arthur Lewis, Walter Lewis, All Williams, Bennie Edwards and Bias Jackson were all present at the crap game at the time the difficulty which resulted in the killing began; that Arthur and Walter Lewis are appellant's first cousins; that none of said witnesses are now present in court; that all of them were present and testified for the State at the first trial of the case, and none of them had ever been present at any other term of the court when the case was called for trial, or had ever again testified; that he does not know where either of said witnesses are, and has not tried to get them here or to locate them and take their depositions. Various objections were urged to this testimony, and the court approves the bill with the following explanation: "I considered that the district attorney had a right to show that the absent witnesses had been in attendance upon this court in the trial of this case and I considered that he had a right to ascertain on cross-examination of defendant whether or not he knew of their present whereabouts. The testimony showed that all the parties who were present at the crap game were absent except Jim Rockwall and John Smith, and I considered that the district attorney had a right to show on cross-examination of defendant whether he had ever made any effort to secure the attendance at court of any of the eye-witnesses to the killing. The fact that reference was made to a former

trial in the examination could not have injured defendant, because the jury already knew of the former trials. The attorneys when securing the jury asked a number of men on the panel if they had heard any of the former trials of the case. Some of them had, and were stood aside and excused by the court because they had formed opinions from what they had heard of the former trials, also prior to the examination of defendant, reference had been frequently made by both defendant's counsel and the district attorney in laying predicates for impeachment purposes to the former trials of the case. The evidence showed that the absent witnesses inquired about were present and testified at the first trial of this case." We are of opinion that this evidence was inadmissible. Practically, this question was decided adversely to the State, and formed a basis of reversal on the second appeal as reported in the 54 Texas Crim. Rep., 414. Under this bill of exception it would seem it is made to appear that the witnesses attended a former trial of the case, and they were State witnesses. Appellant was not chargeable with the absence of State witnesses, nor would he be chargeable with the absence of any witness from the trial, unless there was something to show that he had been instrumental in keeping them away, and there was no attempt made or evidence offered to show that he was in any way connected with or instrumental in keeping the witnesses from attending court and giving their testimony. The mere absence of witnesses from a trial should not be used against an accused person unless he was instrumental in some way in keeping them away.

2. Another bill was reserved to the argument of the district attorney on this testimony before the jury. It would be useless, we think, to discuss this argument of the prosecution further than to say that it should not be indulged. Appellant was not chargeable with the absence of the witnesses.

3. There is another bill of exceptions reserved to the ruling of the court which recites that while Mr. Loving was testifying for the State he stated he was sheriff of Hopkins County at the time of the homicide, which occurred in December, 1904; that on the night of the killing he was at home, and on the following morning he saw and talked with appellant about the homicide; that appellant was in jail at the time under arrest for the killing of deceased. That he went to the jail where appellant was confined, and talked with him there while in his cell and under arrest for this killing. That he gave him a warning about as follows: "I told him that any statement he might make to me then might be used against him, but could not be used for him upon the trial of his case. I then asked him if he wanted to make any statement and he said he did." Appellant made an oral statement which was never reduced to writing or signed by him. The statement is thus quoted in the bill: "He said that he killed John Ivery; said they were shooting crap and fell out over the change; said that the dam lie was passed and that John jumped on him with a

knife and commenced to cut him on the head and arm and breast; that he then grabbed John and they clinched and got down on the ground; that John was cutting him all the time, that is, cutting his hat and clothing, and that they were rolling and tumbling down on the ground; that while they were down on the ground rolling and tumbling he got his gun out and shot John; that he did not know where he hit because they were rolling and tumbling so. He (defendant) further stated that there was nobody there but them at the time." Exception was reserved to this testimony for various reasons, among others, that appellant was at the time under arrest in jail charged with the killing of John Ivery; that before he made the statement he was not warned as now provided by law; that there was no predicate laid for the introduction of this statement, and that said statement was not reduced to writing in the manner required by law and signed by defendant and, for that reason his declaration and confession were inadmissible. The court overruled these objections and exception was taken. The bill is thus approved: "The defendant while testifying in his own behalf, on cross-examination by the State, denied making such statement to the witness Loving at the time and place above set out. He was given the legal warning under the law as existed at the time the statement was made and I considered this testimony admissible." This testimony was inadmissible for any purpose. At the time the confession was made, the present law requiring a confession to be reduced to writing had not been enacted, but that is immaterial. Appellant is now authorized to interpose any objection to such confession, although made before the enactment of the statute, although it may have been admissible as a parole confession at the time it was made. The authorities are quite clear upon this question, and we think unnecessary to be cited. This confession, as used in view of the general evidence, was of a very serious character to appellant's case on trial.

4. There is some criticism of the charge of the court in reference to threats. In a general way, the objections are to this effect: that in charging the law of threats the court should have been more specific in applying the law to the facts of the case in this: that the jury should have been told if the appellant had heard of the threats and believed them, although the jury might not, still this matter should be viewed from the standpoint of the defendant. Upon another trial, if the matter should be presented by the testimony in this attitude, the court should apply the law of threats like any other law of the case directly and pertinently to the issues raised by the testimony.

*Reversed and remanded.*

McCord, Judge, not sitting.