## GEORGE SWEENEY v. THE STATE.

No. 1359.   Decided March 20, 1912.

**1.—Carrying Pistol—Evidence—Illegal Questions.**

Upon trial of unlawfully carrying a pistol, where the State's counsel asked improper questions of defendant's witness to which objections were sustained by the court and withdrawn from the jury, this was not in itself reversible error, none of the questions having been answered by the witness and no injury having been shown.

**2.—Same—Evidence—Accounting for Absent Witness—Rule Stated.**

Either side can introduce any pertinent testimony tending to prove any pertinent issues in the case; and upon trial of unlawfully carrying a pistol, there was no error in permitting the State to account for the absence of an

important State witness, as this fact could be commented on in the argument. Overruling Askew v. State, 59 Texas Crim. Rep., 152; Clifton v. State, 46 Texas Crim. Rep., 22; Hardin v. State, 55 Texas Crim. Rep., 634. Davidson, Presiding Judge, dissenting.

### 3.—Same—Evidence—Reproduction of Testimony.

Where, upon trial of unlawfully carrying a pistol, an important State's witness was absent and the State accounted for his absence and showed that he was beyond the limits of the State and had theretofore testified, there was no reversible error, although the State did not introduce such testimony afterwards.

### 4.—Same—Evidence—Harmless Error.

Where, upon trial of unlawfully carrying a pistol, the State accounted for an important absent witness, this was not such error, if any, as to cause a reversal.

### 5.—Same—Sufficiency of the Evidence.

Where, upon trial of unlawfully carrying a pistol, the evidence sustained the conviction, there was no error.

Appeal from the Criminal District Court of Harris.    Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $200 and ninety days confinement in the county jail.

The opinion states the case.

*E. T. Branch,* for appellant.—Cited cases in opinion.

*C. E. Lane,* Assistant Attorney-General, and *Richard G. Maury,* District Attorney, for the State.—Cited cases in opinion.

DAVIDSON, Presiding Judge.—The following brief of appellant's counsel so satisfactorily discussed the issues presented by the record it is adopted as the opinion of the court:

"Appellant was indicted and convicted under a plea of not guilty of the offense of unlawfully carrying a pistol on and about his person, and his punishment assessed at a fine of $200 and a term of ninety days in the county jail.

"1.    The bills of exceptions are drawn so as to show the charge, issues and testimony, the contentions of the respective parties, and in themselves contain all that is necessary to manifest the supposed errors.    This practice is to be commended, as it saves this court the labor of going through a statement of facts, and such practice has often been recommended by this court.    With bills of exceptions so drawn there is no necessity for a statement of facts, and the exact questions presented are thus squarely presented, and therefore must be squarely met and decided.

"2.    Bills Nos. 1 and 2 may be considered together.    By these bills it is shown that under the plea of not guilty to the charge of unlawfully carrying a pistol on and about his person, the State's evidence is sufficient to support the verdict, and that appellant's testimony, if believed, is sufficient to entitle him to an acquittal.    In

brief, as shown by the bills, the issue was simply whether appellant had the pistol at the time testified to by the State's witnesses. There was a sharp conflict in the testimony, and the lines were closely drawn as to whether appellant was the person who had the pistol at the time testified to by the State's witnesses. It was shown that the pistol was drawn in a house of prostitution, and the question was asked by State's counsel of appellant, while a witness, 'You were just married about a year?' (bill No. 1). State's counsel also asked appellant, 'Wasn't you arrested once and convicted for beating up a woman?' (bill No. 2). In view of the severe penalty inflicted upon appellant, these questions, although not answered, were calculated to, and in the light of the verdict, probably did prejudice the appellant before the jury, and produce a verdict much higher than the minimum penalty. The jury were apt to conclude, and it is the only natural inference, that the State's counsel would not have asked these questions, especially in the form as asked, unless he had knowledge that such was the case, and thus by inference these illegitimate and extraneous matters were gotten before the jury to the prejudice of appellant, and it is impossible to say that these matters may not have influenced the jury to inflict more than the minimum penalty, if they did not bring about the conviction itself.

"The issue was simply whether the appellant carried the pistol at the time, and these outside matters, which were only calculated to prejudice the appellant, should not have been thus attempted to be gotten before the jury.

"In view of the heavy penalty inflicted, these matters, in common fairness, demand a reversal. Campbell v. State, 62 Texas Crim. Rep., 561, 138 S. W. Rep., 607; Tijerina v. State, 74 S. W. Rep., 913, 45 Texas Crim. Rep., 182; Nix v. State, 74 S. W. Rep., 764; Wyatt v. State, 58 Texas Crim. Rep., 115; Williford v. State, 36 Texas Crim. Rep., 414.

"3. Bills Nos. 3 and 4 also show the issues, pleas and contentions of the parties, and that there was sharp conflict in the testimony as to whether appellant was the person who had the pistol. In this state of the case, the bills, fairly construed, show that State's counsel, for the purpose of accounting for the absence of a State witness, F. R. Schultz, and to account for not putting him on the stand as a witness, proved that said F. R. Schultz, who was shown by other witnesses to have been present at the house of prostitution, was absent from the State at the time of the trial, as shown by a letter. In a proper case this testimony is admissible to account for the absence of a witness, but it must not be used to the detriment of a defendant unless the testimony would show that defendant had something to do with keeping the State's witness away. Appellant was not responsible for the absence of the witness, and the State was not entitled in this way to strengthen by inference the State's case, and there being a sharp conflict in the testimony, this requires a reversal. Appellant

is not required to present this error in the motion for new trial when he preserved it by bill of exceptions. Tubb v. State, 55 Texas Crim. Rep., 606; Askew v. State, 127 S. W. Rep., 1037 (59 Texas Crim. Rep., 152, 54 Texas Crim. Rep., 414); Clifton v. State, 46 Texas Crim. Rep., 18; Hardin v. State, 55 Texas Crim. Rep., 631.

Respectfully submitted,

E. T. Branch,
Attorney for Appellant."

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

March 20, 1912.

PRENDERGAST, JUDGE.—While the record does not show it, the writer hereof was not present and did not participate in the original opinion herein rendered.

It will be unnecessary to make a full statement of the evidence in this cause. However, we will state a part of it which bears directly on the questions raised and to be decided.

The State's first witness, Chris Schultz, who might properly be termed, and ordinarily is, the prosecuting witness, testified fully and made out the State's case. Among other things, it was shown practically without controversy that this prosecuting witness, with his brother, Fred Schultz, and at least two other friends, were musicians and were serenading on the night that the offense is charged to have been committed; that they went serenading in a prostitute's house in the "reservation" in the city of Houston, and there met the appellant and some two or three of his friends who made up his party. That they there played on the piano and other instruments they had; that "while they were playing the appellant came over and laid a half dollar on the piano. One of the boys took it and handed it back to him. He made a big bow and said something, but I don't know what it was." Then this witness, Chris Schultz, without objection, further testified: "My brother says to him, you look like buttermilk to me and started out; I was the last one to leave the dance hall; they had left the guitar sitting down by the piano; I walked back to get it; I was the last one out; I heard him make the remark, 'Oh, you sons-of-bitches, get out of here, or I will shoot your belly out,' something to that effect; then I heard the gun cocked; he was right at the door." W. C. Kleine, another witness for the State, without objection, testified: "I was in Blanche Mason's (said prostitute's) place on or about October 17, 1910. I saw the defendant, George Sweeney, there that night; I saw him with a pistol; I saw him draw a pistol on Schultz (evidently Fred Schultz); I was standing right close to him at the time and as he drew the gun on Fred Schultz (evidently Fred Schultz) he rushed out of the door; Chris Schultz and I were standing side by side and just as he pulled the gun he

turned around and at that time Schultz (evidently Fred Schultz) ran out and then he shoved the gun into Chris Schultz's belly and just about that time a young fellow grabbed him and we ran out."

Appellant raises, in effect, but two questions. The first one by bill of exceptions Nos. 1 and 2, which we will consider together. In order to properly show the questions, we will copy the second bill in full, omitting merely the heading identifying it and the signature of the judge at the end. We copy this one because it is fuller than the other. The second bill is:

"Be it remembered that on the trial of the above entitled and numbered cause in said court at said term, the following proceedings were had, to wit: The defendant was on trial under indictment duly charging that he did unlawfully carry on and about his person a pistol, to which he plead not guilty, and his punishment was assessed at a fine of $200 and a term of three months in the county jail, and on the trial of said issue before the jury the State had proved by its witnesses, Chris Schultz, J. J. January and W. C. Kleine, that defendant drew a pistol from his person and presented it at said witness, Chris Schultz, and defendant proved by his witnesses, H. E. Blair, Ed. Smith and Harry Rugely, that they had not seen him (defendant) with a pistol, and by his own testimony that he was not the party who had and drew the pistol on said occasion, the only one in the case, and testified in his own behalf that he did not have a pistol on said occasion, and on cross-examination defendant was asked by the district attorney, 'Wasn't you arrested once and convicted for beating up a woman?' the object being to discredit his testimony, and to which testimony the defendant objected because same was immaterial and irrelevant and prejudicial because going into the details of other offenses, *and the court sustained the objection, and instructed the jury not to consider that question in their deliberations* and to the action of the district attorney in asking said question, and thus getting before the jury that there had been such an occurrence as implied by said question, the defendant here now tenders this his bill of exceptions, and asks that the same be approved, signed and ordered filed as a part of the records in this case, which is accordingly done, this the 13th day of May, A. D. 1911. No testimony of any assault or conviction went to the jury except what was or might have been implied by the asking of said question."

The first bill shows that while the appellant was testifying, the State on cross-examination asked him this question, " 'You were just married about a year' to which question defendant objected on the ground that the same was irrelevant and immaterial and was calculated to prejudice him with the jury in view of the character of said house, *and the court sustained said objection, and instructed the jury not to consider the question,* and defendant then and there excepted, and no evidence went to the jury as to whether defendant was married or single and defendant now presents this his bill of exceptions to

the asking of said question." The bill was approved and signed by the judge.

In the case of Huggins v. State, 60 Texas Crim. Rep., 214, which was a murder case wherein appellant was found guilty of murder in the second degree and his penalty fixed at twenty years in the penitentiary, this court, through Judge McCord, said: "The only ground set up in the motion for new trial is the bill of exceptions taken to certain questions propounded by the district attorney to defendant when he was upon the witness stand, and, second, on the ground of newly discovered evidence. The bill of exceptions complains that when the defendant was upon the stand testifying in his own behalf, the district attorney, on cross-examination, asked him: 'Are you married or single? Still married? You married in Alabama? A wife and two children in South Carolina? You married in Texas? You lived with a woman who has children with you in the State of Texas? You married a woman in the State of Texas? Did not? Did you live with a woman who had a child by you at Eastland, Texas?' Defendant objected to these questions on the ground that they were improper and highly prejudicial to the defendant; that defendant was not on trial for bigamy, etc. We do not find any of the questions answered by the defendant. We find this qualification to the bill of exceptions: 'As each question was asked counsel for the defendant objected, and thereupon the court sustained the objection, and when counsel finally requested that the district attorney be not permitted to ask such questions, the court granted the request by remarking that the district attorney would not ask such questions again; and he did not. Counsel did not request that the jury be instructed not to consider the questions.' Counsel having accepted the bill as qualified by the judge, we are of opinion that the qualification as made by the judge must be accepted by this court. It shows that the objections to the questions were sustained by the court and the district attorney was admonished not to pursue that line of questions. We are aware of the fact that counsel in their zeal frequently ask questions that are illegal and improper and in this case these questions would not have been proper and were not proper. The court held that they were improper questions to be answered and sustained the defendant's objection, and admonished the district attorney to desist. We can not lay down a rule that cases should be reversed because improper questions were asked, except in extreme cases where counsel persist in asking illegal and prejudicial questions after the court has ruled against him, but a bill of exceptions must go further and show that there were answers to these questions and that these answers were highly injurious to appellant's case. We are, therefore, of opinion that the bill is without merit." This case is exactly in point, and clearly against appellant's contention.

In the case of Morrow v. State, 56 Texas Crim. Rep., 521, this court, through Judge Ramsey, said: "It is urged that the court erred

in permitting private counsel for the prosecution to repeatedly ask the witness Hodge if he was at the defendant's place of business during the month of February, 1907, and if so, if he saw appellant, and after the court had excluded the question upon objection of counsel, and in permitting said private counsel to renew said question and state in the presence of the jury that the testimony was material and legitimate in this, that he expected to prove by this witness and the cashier of the City National Bank, that the defendant was in his place of business during the month of February, 1907, and that the witness Hodge saw appellant in his place of business on the 9th of February, 1907, which would contradict and impeach the testimony of appellant's wife and of Dr. Hodge, and that he expected to prove by one Cheney, the cashier of the bank, that appellant personally made deposits in the City Bank during the time appellant's wife testified he was at home sick in bed. In approving this bill the court says: 'It is proper to state in connection with this bill that when the evidence was first tendered the defendant objected and this objection the court sustained; the State's counsel in arguing the admissibility of the evidence after the court ruled, enacted the above described scene in his effort to induce the court to reverse his ruling.' It will be seen, therefore, that it is not complained that the actual ruling of the court is erroneous, but the exception is leveled against the statement of counsel in discussing the matter to the court and in the presence of the jury. We know how difficult it is often to intelligently discuss the admissibility of testimony without a statement of the substance at least of the testimony to be offered in evidence and its relation to the case at bar. If we were to adopt the rule that cases will be reversed because of the statements or argument of counsel on questions of law before the court in the presence of the jury, it would, we believe, be seldom found that any conviction could be sustained where there was a serious contest, because it would not often happen that counsel for the State would be correct in every case where testimony was offered; and to reverse the judgment, where the supposed misconduct went only to the extent of a vigorous insistence of counsel's opinion with illustrations of his views, would be a doctrine both new and dangerous."

Again, in the case of Phillips v. State, 59 Texas Crim. Rep., 534, which was a conviction of murder in the second degree with a penalty of thirty-five years ' fixed, this court, through Judge McCord, in discussing what was evidently an improper question, which was even answered in that case, said: "In the absence of an answer that might be injurious to the defendant we would not be authorized to reverse the case because of an improper question propounded."

This court in Bass v. State, 16 Texas Crim. App., 62, speaking through Judge Hurt, in commenting upon an improper argument—not warranted by the evidence—by the State's attorney, said: "But suppose we concede that the counsel for the State assumed a fact and

commented upon such fact which was not in proof, this court would not reverse the judgment unless such conduct was very clearly calculated to prejudice the rights of defendant. To reverse in all cases in which counsel did not confine themselves to the record would render trials farces. In fact, rare would be the case in which such irregularities would not occur."

Again, in House v. State, 19 Texas Crim. App., 227, in speaking on the same question, Presiding Judge White said: "If all such remarks were held reversible error, but few convictions would stand the test where the case had been hotly contested by able and zealous counsel in the courts below."

Again, this court, through Judge Davidson, in Tweedle v. State, 29 Texas Crim. App., 586, in discussing the same character of question said: "The appellant's counsel objected to this language. Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause. The remarks must not only be improper, but they must be of such a nature as to be clearly calculated to prejudice the rights of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true."

The general rule is that while there may be cases in which, where illegal testimony has even been actually *admitted*, then, upon reconsideration thereof, withdrawn by the court from the jury, such withdrawal might not cure the error, yet the great weight of authority is that it will cure the error, and especially where the admitted prejudicial evidence is not of such a character as that the defendant would thereby be deprived of a fair and impartial trial. Miller v. State, 31 Texas Crim. Rep., 609; Sutton v. State, 2 Texas Crim. App., 342; Nalley v. State, 28 Texas Crim. App., 387; Morgan v. State, 31 Texas Crim. Rep., 1; Jones v. State, 33 Texas Crim. Rep., 7, and a long list of other cases might be cited to the same effect, but we think it unnecessary.

It would, indeed, be a dangerous doctrine for this court to reverse cases because the prosecuting officer, even purposely, merely *asked* an improper question. If we should lay down any such doctrine, it would, in our opinion, have the effect to prevent the State from being properly represented in every case in the trial court, for, if perchance he, inadvertently, or even purposely, merely *asked* an improper question to which objection was promptly made and the court sustained it, and even went further, as in this case, and charged the jury not to consider it, every prosecuting officer would be prevented from doing and afraid to do his duty in representing the State. We can not and do not sanction any such doctrine. Such matters are, as they should be, left to the discretion of the trial court, and when,

as in this case, no material injury is shown to the appellant this court will not reverse because an illegal question was *asked*. See also Belcher v. State, 39 Texas Crim., 123; Renn v. State, 143 S. W. Rep., 171.

The other question necessary to be noticed is raised by appellant's third and fourth bills of exceptions, which pertain to the same matter and are considered together. Bill No. 3, after reciting, in a general way, the status of the case and the proof in the court below, as shown substantially by bill' No. 2, copied hereinabove, states that the State had proved by its witnesses, Chris Schultz, January and Kleine, that appellant "drew a pistol from his person and presented it at said Chris Schultz, and the State showed that one F. R. (Fred) Schultz was present at said time, he being the brother of the witness Chris Schultz, and the name of both the Schultzes being on the back of said indictment among the list of witnesses for the State, but said witness F. R. Schultz was not present on this trial, nor was his testimony given on any former trial or hearing reproduced, nor was it sought to prove, or proven, that he had testified, on any former hearing." And that defendant offered testimony by his three witnesses (naming them) that they did not see him with a pistol, and by his own testimony showing and tending to show that he was not the party who drew the pistol on said Chris Schultz and that he did not have a pistol on said occasion, and also introduced four police officers tending to show that the State's witness had failed and refused to identify appellant as the guilty party shortly after the transaction on the same night, the case being simply a fact case with testimony on each side supporting the different theories and there being a sharp conflict in the testimony, the State's testimony being sufficient to warrant a conviction and no attempt was made to show, nor was there any evidence that defendant was or had been instrumental in keeping said F. R. Schultz away from this trial, or any other, and no attack was made upon the good faith of the State in not putting on or producing all the evidence available and for the purpose of accounting for the absence of the witness and to support the State's case, the State proved by her witness, who had not been asked by the defendant anything about his brother, said Chris Schultz being the first witness for the State, but who had been asked about his failure to identify appellant on the same night after the time it is claimed that appellant had the pistol. "And the witness having stated that his brother was with him at the time of the difficulty was asked by the district attorney where his brother was and stated that he, the witness, Chris Schultz, had got a letter from his brother about two weeks ago; that he (his brother, F. R. Schultz), was in Louisiana; that he (his brother) said he did not know whether he would stay there or not, that his brother was out of the State at the time of this trial to the best of the witness' knowledge, which last mentioned testimony was proven over the objection of defendant that same was

absolutely immaterial, because defendant had made no attack upon the good faith of the State in not producing all the testimony available, and because there was no proof that defendant was instrumental in keeping said absent witness, F. R. Schultz, away from any trial of the case, and it was further immaterial to account for the absence of said witness and to thus use the absence of said witness as testimony against him." The court overruled said objections and permitted said testimony as to the absence and whereabouts of said F. R. Schultz to go to the jury as evidence. In approving this bill the court did so with this explanation: "F. R. Schultz, the party about which inquiry was made by the State's attorney of the witness, had testified on a previous trial of this case, the court could not know at the time of its ruling, but that the State intended to lay a predicate to introduce evidence of the absent F. R. Schultz taken on former trial. The State closed the case without offering the testimony of the absent F. R. Schultz, and the defendant did not move to strike out said testimony and did not assign the supposed error in his motion for new trial."

The appellant took another bill, No. 4, to the qualification of the one above by the judge, wherein, after reciting in substance said bill No. 3, and the qualification thereof by the judge, recites this: "But the court did not state that he *did* know or had any reason to believe or suppose or think that said evidence had been offered for any such purpose, and there now being an appeal from Galveston County, pending in the Court of Criminal Appeals, tried by the presiding judge of this court, involving the right of the State to reproduce the testimony of an absent witness who has removed from the State, or died, and there being some question as to the right of the State to so produce testimony, and there being nothing said by the State indicating that that was the purpose of the State, and it being the rule and practice of said judge to allow a bill of exceptions to be made full upon a mere objection that the testimony was immaterial and irrelevant, the defendant excepts to said qualification of his bill, and here now tenders this his bill of exceptions thereto, and asks that the same be approved and signed and ordered filed as a part of the record in this case, and invites the court or district attorney to state definitely that said evidence was offered for the purpose of showing a predicate for the introduction of the testimony of said absent witness on any former trial, and invites the court to say that he even thought the testimony was offered for such purpose; said testimony being offered solely to show that said witness was absent, so as to account for not putting him on the stand as a witness during this trial, and to strengthen the State's case by inference; this bill is accordingly signed and approved this the 29th day of May, A. D. 1911," which bill No. 4 was signed by the judge.

The rule, without question, is that either side can introduce any pertinent testimony tending to prove any pertinent issue in the case,

or which may do away with or lessen the adverse effect of any proper deduction that may be made from evidence that is introduced against him. In the recent Standard work of Ency. of Law and Proc., 2d vol., p. 773, the correct doctrine is thus laid down: "On the trial of a criminal case, the failure to produce available witnesses, the absence of any evidence wilfully omitted by the State or the accused, or that the evidence suggests, has been wilfully omitted, forms a predicate for any legitimate deduction for or against the defendant, where the materiality and competency of such evidence appears . . ." Citing many authorities sustaining this rule. Among them are cases from the United States, Alabama, Georgia, Iowa, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, North Carolina, Oregon, Texas and Wisconsin.

This same doctrine is also laid down in the recent work of the Am. & Eng. Ency. of Law and Practice, vol. 5, p. 333, in this language: "The rule prevailing in civil cases, under which counsel may comment on the failure of the adverse party to produce evidence apparently accessible to him or witnesses having knowledge of the facts in issue, is likewise applicable in criminal cases. Counsel may comment on the failure of the State or defendant to produce such witnesses or evidence," citing substantially the authorities as the other work quoted above cites.

In the case of Graves v. United States, 150 U. S., 118, the Supreme Court of the United States, through Mr. Justice Brown, said: "The rule, even in criminal cases, is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."

This court in the case of Jackson v. State, 56 Texas Crim. Rep., 28, clearly establishes the rule above announced. Speaking of the argument of the district attorney in that case in discussing the failure of the appellant to introduce his father, who was shown to have been present when the transaction occurred about which he was prosecuted, this court, through Judge Ramsey, said: "The argument of the district attorney was well within his rights. The failure of a defendant to place upon the witness stand one so closely related to him as his father, who is shown to be present, and who must, in the nature of things, have been advised of the circumstances of the crime charged, is a proper subject of comment and discussion. In ordinary experience the inference is fair that the testimony of the person so related would have been unfavorable. Even under our strict construction in respect to the testimony of the wife it has been held that the failure of the defendant to use her as a witness, where the circumstances show she would have known the facts in the case, is a proper subject of comment."

That comment of the district attorney on such matters is proper is clearly established by the authorities in this State. Of this there

can be no question. Eggleston v. State, 59 Texas Crim. Rep., 542; White v. State, 100 S. W., 941; Tabor v. State, 52 Texas Crim. Rep., 387; Battles v. State, 53 Texas Crim. Rep., 202, and many other cases might be cited, but we deem it unnecessary.

In the case of Logan v. State, 53 S. W., 694, which was a case of murder wherein the appellant was convicted of murder in the second degree and his punishment assessed at twenty years in the penitentiary, this court, through Presiding Judge Davidson, said: "Appellant offered in evidence four subpoenas issued at the instance of the State for the witnesses Ragsdale, Jones and Shanks. It is stated in the bill of exceptions that these were eyewitnesses to the transaction, and the State had refused to put them on the stand at the request of appellant. The object of introducing this process was to show 'that said witnesses had attended court, been sworn, and placed under' the rule as witnesses for the State, and were not there at the instance of the defendant,' etc. We believe the appellant had the right to introduce the subpoenas, or prove by any legitimate testimony that these three witnesses had been subpoenaed by the State, and that the State had refused to place them on the witness stand."

Again, this court in Thompson v. State, 11 Texas Crim. App., 55, which was a rape case, in which the jury found appellant guilty and assessed the death penalty, through Presiding Judge White, in discussing the evidence of the ravished girl in which she had stated that her father-in-law was present at the time she was ravished, but was then, at the time of the trial, dead, said: "So far as the additional statement of the witness of the fact that her father-in-law was dead, is concerned, it was admissible as it fully accounted for the nonproduction of this old man who, from the other evidence adduced, would have been, beyond doubt, a most important witness to corroborate the evidence of the prosecutrix."

Again, in the case of Jones v. State, 7 Texas Crim. App., 105, which was a prosecution and conviction of horse theft, the punishment being assessed at ten years in the penitentiary, this court held that when the witness for the defendant was on the stand, he having testified on direct examination that two others, naming them, were present at the time and place and together with him had witnessed a certain horse trade between Airhart and Johnson, it was proper on cross-examination to ask where these two persons were when last heard from by the witness.

We are aware that this court has held in Askew v. State, 59 Texas Crim. Rep., 152; Clifton v. State, 46 Texas Crim. Rep., 18, and Hardin v. State, 55 Texas Crim. Rep., 631, that such testimony is inadmissible, but we do not agree that said holding in either of these cases is correct. Especially in view of the fact that this court had, as shown above, expressly held the contrary prior thereto, which cases were not overruled, and in view of reasonableness of such evidence and the general rules announced above.

As shown above, it is unquestionably the law of this State that either side can comment upon the fact that the other has had material testimony in its power which it did not produce and introduce before the jury. The reason that this can be commented upon is that it is material for the jury to consider it for the purposes as stated by Judge Ramsey in the Jackson case, supra, and by the Supreme Court of the United States in the case of Graves, supra. If it can be commented upon, then certainly it can and should be considered by the jury, whether it is commented upon or not. And the fact that the bills in this case show, in effect, that it was not commented upon or discussed by appellant before the jury, can not and does not affect the question.

Again, it is our opinion that this testimony was admissible for the purpose, if desired, to reproduce and introduce in evidence the testimony of Fred Schultz, who was shown to be at the time of the trial outside of the State and no certainty of his return thereto. The fact that the State did not afterwards introduce it does not affect the question, and especially so, as the appellant did not move to exclude it from the jury on that ground. At the time of the trial in this case, this court had recently decided that such testimony could not be introduced, through a special judge (Kemper v. State, 63 Texas Crim. Rep., 1, 138 S. W., 1025), but as shown by the bill, there was then pending in this court the case of Robertson v. State, appealed from Galveston County, over which court the presiding judge on the trial of this case presided, which had not then been decided, but since then has, wherein it was held that such testimony was admissible. Robertson v. State, 63 Texas Crim. Rep., 216, 142 S. W. Rep., 533.

Again, it is our opinion, even if this testimony should not have been admitted, that it was not such error as should cause a reversal of this case. See Tweedle v. State, supra; Renn y. State, 64 Texas Crim. Rep., 639, 143 S. W., 171, and the cases therein cited to that effect. A great many other cases might be cited on this point, but we think it unnecessary.

We, therefore, conclude that there is no reversible error in this case, and that the previous judgment and opinion herein rendered reversing and remanding it, be set aside, a rehearing granted and the judgment of the lower court be in all things affirmed.

*Affirmed.*

HARPER, JUDGE.—At the time of the rendition of the original opinion I concurred therein, but upon a more mature investigation of the matters presented, I do not think they present such errors as should result in a reversal of the case, and I agree to an affirmance of it.

DAVIDSON, PRESIDING JUDGE (dissenting).—At a former day

of the term the judgment herein was reversed and remanded by the court. The State has filed a motion for rehearing. My brethren in an opinion written by Judge Prendergast have decided to grant the rehearing and now affirm the judgment. I can not agree with them in this disposition of the case. After a review of the matters involved in the appeal, and the opinion on rehearing as written by my brother Prendergast, I am more firmly convinced that the original opinion is correct. I do not propose to go into any lengthy discussion of the matters involved. Many cases could be cited holding that when improper questions are asked and not answered, and where objections have been sustained and the answers excluded, do not constitute reversible error, but in those cases it was also held that no injury was shown. The cases further hold that if injury is shown, then the error is reversible, although the answers were excluded. It has also been held that even where illegal evidence has been admitted, that may not always cause a reversal, but these holdings have always been qualified by the statement that there was no injury shown by its admission. I do not propose to go into a discussion of those cases or those questions now. There are many cases where these questions have arisen wherein the judgments have been reversed because injury was shown. Wherever injury is shown or probably shown, then the judgment under the authorities should be reversed. Of course, these questions sometimes come on very close lines. Wherever matters of this character arise, the rule ought to be in consonance with the basic principle of our law, which is that everyone accused of crime shall be presumed innocent until his guilt is established beyond a reasonable doubt. Such doubt is always to be legally solved in favor of innocence and not in favor of guilt. My brethren take the other view and solves this doubt against the accused and in favor of his guilt. This is legally wrong. The safe, legal rules, keeping in mind the above stated propositions of fair trial, presumption of innocence, and reasonable doubt, which should govern this court, may be summed up as follows: (1) If the evidence, being illegal or unauthorized, probably leads to a conviction, it is error of a reversible nature to admit it. This rule would seem to be correct without discussion. (2) If guilt be conceded, the evidence admitted is unauthorized by law and the conviction carries by the judgment a greater punishment than the minimum, then the error is clearly erroneous. This is not debatable in our jurisprudence. There is a third proposition which may be thus stated: that where the State by asking illegal questions of a damaging nature, although the answers are excluded, or the witness not permitted to answer, yet if the conviction occurs and the punishment is a heavy one or beyond the minimum, and this illegal conduct and manner of examination may have led to a punishment greater than the minimum, or even have led to the conviction itself, and turned the reasonable doubt and the presumption of innocence against the defendant, then it ought to be reversible

error. Such I understand to be the settled law in this State. Now, applying those rules to this case: We find that judgment was for two hundred dollars and ninety days imprisonment in jail. The minimum punishment for the offense charged in the indictment is one hundred dollar fine. The defendant here then has allotted to him one hundred dollars in excess of the minimum fine, and in addition ninety days in jail. That the questions asked with reference to appellant's attack on a woman, and the matters as set out in the bill of exceptions and mentioned by my brethren, were illegal is conceded. It is sought to be avoided, however, because the answers were not permitted, but it got before the jury, and in such way as to make them believe that the matter did occur, and the verdict is responsive to that theory of their conclusion.

As to the admission of the testimony in regard to the absence of one of the State's main witnesses, under all the authorities this testimony is not only not admissible, but so far as I am aware, has been held fatally inadmissible and reversible. The defendant could not, under the facts of this case, be held responsible for the absence of the State witness. He had nothing to do with his absence, and it was not sought to connect him with the fact that the witness was absent. This absence of the State witness was improperly admitted against the defendant, and this by all the cases. It was a seriously contested issue before the jury that appellant had the pistol at the time and place contended by the State. One State witness testified that he did have it, but the evidence otherwise shows that he did not. Now, in this condition of the record the absence of the State witness without fault on the part of the defendant is thrown in the scale against him, and illegal testimony in regard to some assault that he may have made upon a woman some time previously, were sought to be injected into the case against him. That the conduct of the prosecuting officer was wrong in trying to inject this illegal matter in the case is conceded by my brethren, but they claim it is not of such nature as to require a reversal of the judgment. That appellant was not responsible for the absence of the State witness is clearly demonstrated by the record, and yet these two matters are thrown into the scale and its injurious effect is reflected in the extreme punishment imposed by the verdict of the jury. How this judgment could be affirmed is to my mind incomprehensible.

I still believe the original opinion is correct, and that the motion for rehearing ought to be overruled. I therefore respectfully enter this my dissent to the affirmance.