## WILL DUCKWORTH v. THE STATE.

### No. 2013.   Decided May 31, 1900.

**1.  Rape—Letters as Evidence.**

On a trial for rape, letters which were not addressed to the prosecutrix nor to anyone, nor signed by anyone, and which were never in possession of the prosecutrix, nor traced from defendant to her nor to anyone for her, and were not shown to have been written by defendant to prosecutrix, were not admissible in evidence and should have been excluded.

**2.   Rape of a Female Under Fifteen Years of Age—Evidence Insufficient.**

See the opinion for facts in evidence on a trial for rape of a female under the age of 15 years which the court holds is so utterly contradictory as to the age of the female, and otherwise so unsatisfactory as to be entirely insufficient to support the conviction.

APPEAL from the District Court of Collin.   Tried below before Hon. J. E. DILLARD.

Appeal from a conviction of rape upon a female under the age of fifteen years; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with rape upon Nora Rogers, a female under the age of fifteen years and not the wife of appellant.   The date of his alleged offense was stated to be on or about the 15th day of July, 1899.

The opinion states the material evidence in the case.

*Jones & Eastham,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of rape, under an indictment charging that offense, upon a girl under fifteen years of age, and given five years in the penitentiary.

B. D. Rogers (father of prosecutrix) was permitted to testify that two certain letters were in the handwriting of defendant.   Among

other things he stated that he found the letters in the possession of his daughter Cora at his barn, and Cora said the letters came from Vol Freeman. Nora Rogers (prosecutrix) never saw the letters. He thought, but was not sure, he had seen appellant write, nor could he state time or place. He had, however, seen writing which defendant admitted was his. He had picked cotton for witness, and had kept the accounts or books showing the names of the cotton pickers, dates, and numbers of pounds picked by each. These entries were admitted by defendant to be in his handwriting, but witness did not see him make them. He was satisfied the letters were written by appellant. He stated he was not an expert. Upon this predicate the letters were admitted in evidence. Various objections were urged. If it be conceded the witness qualified sufficiently to testify in regard to the handwriting, then the letters were not admissible, because, as a fact, they were not addressed to the prosecutrix, and in fact to no one, nor were they signed by anyone. They were never in possession of prosecutrix, nor were they traced from defendant to prosecutrix, nor to anyone for her, nor was it undertaken to be shown that the letters were written by defendant to the prosecutrix. The letters were of a damaging nature. The letters should have been excluded.

The evidence, to say the least of it, is of a very unsatisfactory nature. The State's case depended for the act of intercourse and penetration entirely upon the testimony of the prosecutrix. On direct examination she stated improper relations began in December, 1898, and continued at intervals until the summer of 1899. These relations were adulterous. At no time did questions of force and want of consent enter into said relations. Later she induced defendant to take her from home. En route to Houston (her ultimate destination) she and defendant spent a night in Dallas, occupying the same room, and had sexual intercourse. They were arrested the following day at Hempstead, and carried back on different trains to Collin County. She gave as a reason for leaving home the brutal treatment of her father, stating, among other things, that he had beaten her at times very severely with broomsticks, had knocked her down, and that his treatment had been brutal in the extreme, and because of it she induced appellant to take her from home. On cross-examination she stated that her testimony in regard to carnal intercourse was all untrue, except the incident which occurred about four weeks prior to appellant's trial, the trial occurring on April 27, 1900, assigning as a reason for her evidence in chief her father's threats and promises as inducements; that she was closely guarded at home by her father after being brought back from Hempstead; that she was surrounded by his particular friends, and assisted by them in his designs and in securing her to so testify. In this character of case, under the authority of Blair v. State (decided at the present term), 56 Southwestern Reporter, 622, and Davis v. State, 43 Texas, 189, this testimony will not support a conviction.

Then we are relegated to the act of intercourse occurring about four weeks prior to the trial to support the judgment. This brings up the question as to the age of the prosecutrix. Her mother, Mrs. Susan Rogers, testified that she and her husband were married in January, 1884; that prosecutrix was born on the 11th of September, 1885, and was their firstborn. She was then shown a leaf from the family Bible, which showed the date of prosecutrix's birth to be September 11, 1884. The admission of this leaf from the family Bible confused the witness very much, but she stated if her husband made these entries they were not true. This leaf also contained the date of the birth of Husie Rogers as of August 27, 1877. It also contained the birth of Edker Rogers as of March 22, 1880. Then follows the date of the prosecutrix's birth, on September 11, 1884. On reverse side it records the death of Husie Rogers as occurring on March 10, 1878. Mrs. Rogers further testified that Husie and Edker were the brothers of her husband. B. D. Rogers (husband of Mrs. Rogers and father of prosecutrix) testified that their marriage occurred in January or February, 1884; that prosecutrix was born on September 11, 1885; and that Husie and Edker Rogers were his sons. The leaf from the Bible was also shown him, to his confusion. This leaf from the Bible had been torn out of the old family Bible by prosecutrix when she ascertained that her father intended to show her birth as September, 1885, instead of September, 1884, and was sent to Mrs. Freeman; thence it found its way into the trial of this case. This witness stated the entries did not look like his writing, but he declined to say he did not make them; but stated if he did they were correct, unless he was writing for fun, and he may have made them for fun. This family Bible was not produced at the trial, and was in the possession of Rogers and his wife at home. It is shown this witness told the county attorney on the trial of appellant for her abduction by appellant that prosecutrix would be sixteen years of age in September, 1900. This statement was made before the charge of rape was filed, on April 14, 1900. Prosecutrix testified that her father and mother had always stated to her, and in her presence, that she would be sixteen years of age on September 11, 1900, until the morning she and her father came to McKinney to make complaint against appellant for rape; that her father and mother had up to said date always stated and told her that she was born on September 11, 1884. While en route to McKinney, her father asked her when she was born, and she said, "September 11, 1884." He replied, "You've got that wrong; you were born on September 11, 1885." She says, "This was the first I ever heard that I was not born on the 11th of September, 1884." Here the slip of paper from the family Bible was shown prosecutrix, and she stated: "I recognize the slip of paper as the leaf from our Bible at home. When I first learned they were going to try to make it appear that I was a year younger than what I am, I tore this leaf out of our Bible, and gave it to Mrs. Freeman to bring to McKinney.

All the writing on this leaf is in my father's handwriting. He wrote it. I know his handwriting well. This leaf is in the same condition it was before I tore it out of the Bible. The Bible out of which I tore this leaf is at home. We have a large family Bible at home, and this small one as well. There were no entries of the dates of the births and deaths of our family in the large Bible when I left home about four weeks ago, and when I returned there were none then. I looked in it to see, and there were no entries there. I do not know what is in it now, for they have taken the large Bible and locked it up in the trunk." She further stated: "The first time defendant had carnal knowledge of me was the night we went to Anna, about four weeks ago." She testified on April 27, 1900. The State had it within its power, if this leaf was not from the family Bible, to produce the Bible and show it false. It was in the possession of the father. She placed herself at the mercy of the prosecution on her veracity in regard to this matter. They failed to avail themselves of the contradiction, if her testimony was untrue. The testimony of the father and mother is in a singular state of direct conflict. There are two names entered upon the record of the Bible,—Husie and Edker Rogers. The wife testified they were the brothers of her husband, and he testified positively they were his children, and both born prior to their statement of the date of the marriage. These matters are left unexplained, and stand as stated. Now, if the girl was born on September 11, 1884, she was fifteen years of age on September 11, 1899; and the State would be required, under the allegations of the indictment, to look to acts of sexual intercourse prior to September 11, 1899, as a basis for this prosecution. If she had passed that date at the time of sexual intercourse, then rape could not be committed upon her, except by force, threats, etc. In other words, if she had reached that point before the improper relation, then appellant could not be convicted under the indictment, and the State would be forced to concede a verdict of not guilty. Under her testimony and under the authorities cited (Blair and Davis cases), we could not permit the conviction to stand because she emphatically denied that act of intercourse occurred prior to the night they went to the little town of Anna, which she said was about four weeks ago. But if it occurred in December, 1899, this still brings it beyond the point of fifteen years of age. However, upon another trial these matters of contradiction may be met and explained, but as this record is presented to us we would not feel justified in permitting this conviction to stand. We have seldom been called upon to review a statement of facts so utterly contradictory in the testimony for the prosecution. That appellant and the girl ran away from home is certain; that they may have been carrying on their adulterous intercourse may be true; but she denies it most emphatically up to the time she left home, and gives as a reason for testifying as she did on direct examination the threats, compulsions, and promises of her father. We have said this much in regard to the evidence in order

to call attention to the confused and contradictory statements in the testimony. The judgment is reversed and the cause remanded.

*Reversed and remanded.*