## KNOX KEARSE v. STATE.

### No. 1956. Decided November 13, 1912.

### Rehearing Denied December 18, 1912.

**1.—Rape—Function of Court—Practice on Appeal—Contradiction.**

Where, upon trial of rape, the prosecutrix contradicted herself and was contradicted by other testimony, but there was sufficient testimony to sustain the conviction, the judgment of conviction will not be disturbed.

**2.—Rape—Same—Functions of Jury—Practice on Appeal.**

Our law expressly provides that the jury in all criminal cases are the exclusive judges of the facts proved and of the weight to be given to the testimony, and this court cannot assume the functions of the jury in this behalf without usurping authority that was never given nor intended to be given to it; and where, upon trial of rape, the evidence was conflicting and there were contradictions in the testimony, it was the peculiar province of the jury to settle these questions of fact and a conviction will not be set aside on this ground; the evidence being sufficient to sustain the conviction.

**3.—Same—Evidence—Testimony Before Grand Jury.**

Where, upon trial of rape, the testimony of one of defendant's witnesses tended to break down the State's case, there was no error in permitting the State to introduce the written testimony of said witness before the grand jury, which was in direct contradiction of some of his testimony given on the final trial.

**4.—Same—Charge of Court—Testimony Before the Grand Jury.**

Where, upon trial of rape, the State introduced testimony given before the grand jury by one of defendant's witnesses for the purpose of impeaching said witness' testimony, and left out a portion thereof which the defendant introduced, there was no error in the court's charge limiting said testimony to the credibility of the witnesses concerned therein; and especially, where the latter part of the charge was favorable to defendant. Following Gallegos v. State, 48 Texas Crim. Rep., 58, and other cases.

**5.—Same—Evidence—Age of Prosecutrix—Accounting for Absent Witness.**

Where, upon trial of rape, the State was permitted to prove the age of the prosecutrix at the time of the alleged offense and as to the presence of the members of her family, there was no error to admit testimony by such State's witnesses that the mother of the prosecutrix was dead at the time of the alleged offense, for the purpose of accounting for the mother's absence as a witness; and this, although defendant admitted the age of the prosecutrix.

**6.—Same—Evidence—Rule Stated.**

Where it was the contention of the defendant that the different members of the family of prosecutrix were in and about the premises at the time of the alleged offense, and could have known what was going on, and thereby attacked the credibility of prosecutrix, there was no error in permitting the State to show that the mother of prosecutrix was dead at the time, in order to account for the absence of her as a witness. Following Sweeny v. State, 65 Texas Crim. Rep., 593, 146 S. W. Rep., 883; there being no injury shown to defendant.

**7.—Same—Evidence—Reputation of Prosecutrix—Limiting Number of Witnesses.**

Where, upon trial of rape upon a female under the age of consent the court limited the number of witnesses to three to show the bad character of prosecutrix for chastity, there was no error in view of the fact that prosecutrix admitted that she had had carnal intercourse with other men; besides, such testimony was not admissible for the purpose of affecting the credibility of prosecutrix who was under age of consent.

**8.—Same—Bill of Exceptions—Ground of Exception—Practice on Appeal.**

Where, upon trial of rape, the court sustained an objection to the question propounded by defendant's counsel to one of defendant's witnesses, to the effect whether he was present at the trial of another party also accused for the offense of rape with the prosecutrix in the instant case- wherein said other party was acquitted, and the objection of defendant's counsel was to the court's remarks that he would fine counsel if he repeated the question, because such remarks were calculated to mislead the jury, there was no error, and this court cannot look to the oral argument of one of appellant's counsel that the object of such question was for another purpose, to-wit: to show the testimony of prosecutrix on said other trial.

**9.—Same—Rule Stated—Practice on Appeal—Other Assignment of Error.**

Where appellant's counsel in oral argument contended that the court below refused to permit appellant's attorneys to tell the court what they expected to prove by their witness as to what the prosecutrix had testified to on the trial of a third party charged with a similar offense on prosecutrix; but the bill of exceptions and motion for new trial did not assign this reason, but simply showed that defendant's attorney requested the court to withdraw the jury that he might make his objections and take his exceptions to the ruling of the court, which the court declined to do, stating to counsel that he could put any objection in his bill, and the court, thereafter, prepared a bill of his own in lieu of the one presented by defendant's counsel, which counsel accepted, there was no error, and this court cannot consider an assignment of error not contained in the bill of exceptions or motion for new trial.

**10.—Same—Bills of Exception—Practice on Appeal—Suspending Trial.**

Under Article 744, Code Criminal Procedure, and various articles under the Revised Statutes, as to bills of exceptions, in both criminal and civil cases, where the judge, upon trial of rape, substantially complied with the rules laid down in said statutes, and counsel was satisfied with the bill of exceptions as prepared by the trial judge, and there were no affidavits of counsel or other showing that said trial judge had not complied with said statutes, there was no error, and the mere fact that the court did not suspend the trial and give him a bill of exceptions at once was not reversible error.

Appeal from the District Court of Fisher.   Tried below before the Hon. John B. Thomas.

Appeal from a conviction of rape upon a female under the age of consent; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*M. E. Rosser* and *Wilmeth & Boyd* and *L. H. McCrea* and *Higgins, Hamilton & Taylor,* for appellant.—On question of the court's charge as to the witness' testimony before the grand jury being on the weight of the evidence: Greene v. State, 17 Texas Crim. App., 395; Dickie v. State, 27 S. W. Rep., 140; Cline v. State, 27 S. W. Rep., 128; Scott v. State, 36 S. W. Rep., 276.

On question as to age of prosecutrix and death of her mother: Draper v. State, 22 Texas, 401; Preston v. State, 4 Texas Crim. App., 186; Pinckord v. State, 13 id, 468; Segura v. State, 16 id, 221; Rocquemore v. State, 59 Tex. Crim. Rep., 568, 129 S. W. Rep., 1120.

Upon question of impeaching general reputation of prosecutrix and limiting number of witnesses: Wilson v. State, 18 Texas Crim. App., 576; Adams v. State, 19 id, 1; Browder v. State, 30 id, 614.

On question of refusing counsel to take his bill of exceptions in open court, either in the presence of the jury or with the jury retired:

Browder v. State, 18 S. W. Rep., 197; Smith v. State, 19 Texas Crim. App., 95; Kennedy v. State, 19 id, 618; Brown v. State, 13 id, 59; Soger v. State, 11 id, 110; Knox v. State, 11 id, 148; Rosborough v. State, 21 id, 672; Powers v. State, 23 id, 42; George v. State, 25 id, 229; Kirk v. State, 37 S. W. Rep., 440; Livar v. State, 9 S. W. Rep., 552.

On question of court's charge on impeaching testimony on former trial: Giles v. State, 67 S. W. Rep., 411; Gallaher v. State, 28 Texas Crim. App., 247; Early v. State, 9 id, 476; Stockman v. State, 24 id, 387; Fitzpatrick v. State, 37 Texas Crim. Rep., 20.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of rape of a girl under fifteen years of age and his penalty fixed at ten years in the penitentiary.

Appellant contends that the evidence is insufficient to sustain the verdict. The contention is based largely on the fact that the girl alleged to have been raped by appellant contradicted herself in her testimony, and was contradicted by the testimony of other witnesses and by some circumstances. There is hardly any contested case that comes to this court but what there are contradictions in the testimony and frequently a principal witness may contradict himself in material matters. In such cases when it is contended that the evidence is insufficient to sustain the verdict this court cannot legally take the place of the jury and determine whether or not it will believe any witness, or witnesses, and from all of the testimony, as put down on paper and sent to this court, it would have found a different verdict from that of the jury and if so reverse the case on that account. The only question this court can determine is whether there is sufficient evidence if believed by the jury to sustain the conviction. This court passes upon that question as a question of law which is all it can legally do under such circumstances.

Our law expressly provides that the jury in all cases are the exclusive judges of the facts proved and of the weight to be given to the testimony. This court, therefore, cannot take that question from the jury without usurping authority that was never given or intended to be given to it. The jury, in a felony case, is made up of twelve fair, disinterested, impartial, unprejudiced, unbiased and competent jurors, selected from different portions of the county, each one of whom hears all the witnesses, looks them in the face when testifying, observes their manner and the method of their examination by the respective attorneys, then hears the argument of the attorneys for each side, one side undertaking to break down the testimony of the witness and calling attention to every contradiction in the testimony of such witness and the contradiction by others of him, the other explaining such matters and seeking to sustain such witness, then hear

and take with them in their retirement the charge of the court; then the twelve men discuss and consider in private between themselves all such matters, and after weighing it all and all the arguments against it and in support of it, come to the conclusion that the testimony of a certain witness or witnesses, although contradicted and although there are contradictions in the testimony of such witness, that it is true and they believe it. The jury is made up of men of different ages, from young to comparatively old men, and they pursue different occupations and businesses. With all these surroundings they are much more competent to arrive at the truth than are the judges of this court who must look solely to the testimony as written down on paper. It cannot portray the manner, the looks and the deportment of the witness, nor the manner of his examination and cross-examination by the attorneys. Besides this, the presiding judge hears and sees and observes all that the jury does in the trial of the case and he then sustains the verdict of the jury. Therefore, when the evidence taken in its favorable light sustains the verdict this court can not legally set it aside.

We have carefully read and studied all the evidence in this case. It is amply sufficient, if believed by the jury as it was, to sustain the verdict. We are not authorized to set it aside. It is unnecessary to recite the evidence.

Among others, the appellant introduced the witness, Clarence Thrash, whose testimony, in some particulars, tended to break down the State's case, as made by its evidence and, in some particulars, in favor of the defendant. On cross-examination of this witness the State by him showed, or tended to show some inconsistencies, if not contradictions, of his own testimony, damaging to the State, given in his direct examination. Then the district attorney produced the written and signed testimony of this witness before the grand jury when they were investigating the case and found the indictment herein. He admitted that that was his signed statement of his testimony before the grand jury and that he had so testified before the grand jury; that before he testified before the grand jury he was duly and properly sworn. The district attorney, who was present in the grand jury room and who wrote down this statement before it was signed by this witness, as well as one of the grand jurors, testified positively that this statement of the witness of his testimony before the grand jury was written down at the time he gave it, read over to him and signed by him. There is no doubt, and can not be, from the testimony, that this statement was signed by the witness and his testimony before the grand jury as therein written down and signed by him. This testimony, in some particulars, was in direct contradiction of some of his testimony in favor of the appellant given on this trial. The State thereupon, without any objection whatever by appellant, introduced the following portion of said statement.

"My name is Clarence Thrash. I know Essie Moore and Etta Moore.

Am a rural route mail carrier. Etta Moore told me she was 17 years old and asked me to hold her mail. Have been to Moore's house two times. The first time was there was to get E. L. Moore to sign a petition to the government for a daily mail route. This was in 1911. I cannot tell what month or the day of the month. Nobody but the Moore family was there that day. I was back there some time before any arrest was made. Nobody was there that day except the two girls. It was on Friday or Friday a week before anybody was arrested. Can't say for certain. I went with Knox Kearse. Knox Kearse and I went there about the middle of the afternoon. Just the two girls were there. Two McCullough boys passed around there while we were there. We stayed there about twenty minutes. I talked to both of the girls. I have had sexual intercourse with Essie Moore. I never did have intercourse with Etta Moore. (Some omitted.) At the time Knox Kearse and I were at Moore's house as above stated, Knox Kearse went into the Moore house. I did not use my watch to tell the length of time that he was in the house. Knox Kearse was with the younger girl. We went to the house a second time to get a drink of water and Kearse went into the house with the younger girl, Etta Moore, the second time that we were that day. This day was not a regular mail day with me. Kearse and the girl remained in the house three or four minutes. I was with Essie Moore during this time. Me and Essie had gotten to my motorcycle about 100 yards from the house when Kearse and Etta Moore came out of the house. Kearse and Etta Moore came on to the motorcycle where me and Essie were. I did not see any children at the house that day. E. L. Moore, the father of the girls, was out in the field about a half mile. I have guyed Knox Kearse and offered to bet him a dollar that he has had intercourse with Etta Moore, but he never would say whether he had or not. He would not say anything. That day Knox Kearse told me that he had been out to Moore's before then. One night in town, when Kearse was with Lon Smith, Smith was drunk, and Kearse took him home, in an auto. Kearse afterwards told me that he had been out to Moore's that night, in the car he took Smith home in, that night.

"Clarence Thrash."

In the introduction of it by the State, where the words in about the middle of the body of the statment above copied, says in parenthesis "some omitted," the State omitted and did not introduce that part of the statement. Thereupon, the appellant announced that he would introduce that part of the statment which was omitted by the State, which part is as follows:

"Charles Jones told me that he had been to Moore's house. He told me this about one week before he was arrested. He said the Moore girls were warm members. Jones and I were standing in a crowd when he made this statement. He said he had been out there and asked me if I had seen him out at Moore's house. It was about a week before Jones was arrested that he made this statement. Hugh

Scarborough told me that he had been out to Moore's. I think it was about a week after the boys were arrested ,that he had been out there. Have seen Curtis Teeter and another boy out there at Moore's,'' —announcing at the time that they desired to introduce it for the purpose of impeaching the prosecutrix and for whatever the jury might think it worth.

The court on this subject gave to the jury this charge:

"Fourth:—The written statement of the witness, Clarence Thrash, made before the Grand Jury of Scurry County, Texas, from the beginning of said statement up to and including that part of said statement ending with the words, 'I never did have sexual intercourse with Etta Moore,' and also that part of said statement beginning with the words 'at the time Knox Kearse and I were at the Moore's house as above stated, Knox Kearse went into the Moore House,' and ending with the end of said statment,—was not admitted before you for the purpose of proving the guilt of the defendant in this case, but was admitted before you solely for the purpose for you to consider, if you do consider it, for whatever right (weight) you may give it, if any, or for whatever you may consider it worth, if anything, as impeaching the credibility of the witness, Clarence Thrash, and you will consider it for no other purpose. The balance of said statment beginning with the word, 'Charles Jones told me that he had been to Moore's house.' and ending with the words, 'have seen Curtis Teeter and another boy out there at Moore's,'—offered in evidence before you by the defendant, was admitted before you solely for the purpose for you to consider, if you do consider it, for whatever you may think it entitled to, if anything, as impeaching the credibility of the witness Etta Moore, and for no other purpose.''

Appellant objected to this charge on various grounds. In our opinion the first part of this charge about the jury considering it to impeach the credibility of Thrash was proper and in no way objectionable. The latter part of the charge, telling the jury they might consider the portion of it introduced by the appellant to impeach the witness, Etta Moore, should not have been given and that part of the statement should not have been admitted in evidence for that purpose. The witness, Etta Moore, could not be impeached by this character of statement made at the time and under the circumstances when this was by the witness Thrash, but this portion of this charge is clearly in appellant's favor and not against him and he has no cause of complaint on that account. Clanton v. State, 13 Texas Crim. App., 139; Wooley v. State, 64 S. W. Rep., 1054; Turner v. State, 51 S. W. Rep., 366; Gutgesell v. State, 43 S. W. Rep., 1016; Scott v. State, 23 Texas Crim. App., 521; Rippey v. State, 29 Texas Crim. App., 37; Gibson v. State, 45 Texas Crim. Rep., 312; Wyatt v. State, 38 Texas Crim. Rep., 256; Callegos v. State, 48 Texas Crim. Rep., 58. We think the authorities cited by appellant on this subject are inapplicable.

By one bill of exceptions it is shown that when the State's witnesses.

E. L. Moore and Mrs. May Cross, father and sister, respectively, of the prosecuting witness, Etta Moore, were on the stand as witnesses for the State, the State was permitted to prove by them that the mother of Etta Moore was dead. That before this evidence was introduced the appellant, in open court, in the presence of the jury, admitted that Etta Moore was fifteen years of age on January 6, 1912, and that she was not fifteen years of age at the time of the alleged offense (the offense was alleged to have been committed on April 20, 1911, and the proof showed, if committed, it was on or about the same date). By another bill that when said State's witness, E. L. Moore, father of Etta, was upon the stand as a State's witness, the State asked him who composed his family in the spring of 1911, and during April of that year. He answered: "I had three little girls and two little boys at that time. The names of the three little girls were Essie, Etta and Linnie." Then the State's counsel asked him whether or not his wife was dead at that time. He answered: "At that time my wife was dead." State's counsel then asked him when his wife died, to which he replied: "My wife died four years ago last fall, the fall of 1911." That the appellant objected to the said questions by the State, asking whether or not his wife was dead at that time and his answers thereto, and the State's further question of him when she died and his answer thereto, "for the reason that same was immaterial, irrelevant and calculated to inflame the minds of the jury and to prejudice the rights of the defendant before the jury." The court overruled these objections and permitted the questions and answers above objected to. The court in approving the bills qualified them by stating, the court did not believe the defendant could waive or the State dispense with the proof of prosecutrix's age and he admitted the proof to account for the absence of the mother as a witness to the age of the prosecutrix.

We think the appellant could admit and be bound thereby, that the prosecutrix was not fifteen years of age at the time of the alleged offense upon her, and that the court, in assigning this as his reason for admitting said testimony may have been incorrect, but even his assigning an incorrect reason would not make the evidence inadmissible, if it otherwise was admissible. If the evidence was admissible for any legitimate purpose, neither the bill nor the record anywhere shows, or tends to show that any improper use was made thereof, nor how its introduction was calculated to inflame the minds of the jury, or prejudice appellant's rights, are shown or attempted to be shown.

Evidently the contention of the appellant before the jury, among other things, was that the different members of the Moore family were about the premises or in or about the house at the time of the alleged offense so that they could and would have known what was being done, or that the testimony of the prosecutrix was not to be believed, because different members of the family were about in such way as that the offense would not have been committed at the time

and place the prosecutrix testified it was. The record, as the bill, shows that it was proven without objection who constituted the other members of the family, the father and the six children, and the whereabouts of each at this particular time was fully shown so as to account for their not being present or in proximity at the time where the offense was alleged and shown to have been committed.

Upon a thorough investigation and consideration of this character of question in the case of Sweeney v. State, 65 Tex. Crim. Rep., 593, 146 S. W. Rep., 883, this court held: "The rule, without question, is that either side can introduce any pertinent testimony tending to prove any pertinent issue in the case, or which may do away with, or lessen, the adverse effect of any proper deduction that may be made from evidence that is introduced against him. In the recent work of Standard Ency. of Law & Proc., vol. 2, p, 773, the correct doctrine is thus laid down: 'On the trial of a criminal case, the failure to produce available witnesses, the absence of any evidence willfully omitted, forms a predicate for any legitimate deduction for or against the defendant, where the materiality and competency of such evidence appears * * *' Citing many authorities sustaining this rule. Among them are cases from the United States (Supreme Court), Alabama, Georgia, Iowa, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, North Carolina, Oregon, Texas and Wisconsin.

"This same doctrine is also laid down in the recent work of the Am. & Eng. Ency. of Law & Practice, vol. 5, p. 333, in this language: 'The rule prevailing in civil cases, under which counsel may comment on the failure of the adverse party to produce evidence apparently accessible to him or witnesses having knowledge of the facts in issue, is likewise applicable in criminal cases. Counsel may comment on the failure of the State or defendant to produce such witnesses or evidence,'—citing substantially the authorities as the other work quoted above cites.

"In the case of Graves v. United States, 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021, the Supreme Court of the United States, through Mr. Justice Brown, said: 'The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.' "

The record in this case, we think, demonstrates the application of the above rules thereto. As stated above, the State's theory was to account for the whereabouts of each member of prosecutrix' family at the time the alleged offense was committed for the purpose of showing that they were not in sight or hearing so as to have known, or seen, what was being done and thereby tend to prevent a successful attack of the testimony of the prosecutrix on that theory. It was, therefore, very important, we think, for the State to show where the mother was, for of all members of the family, the most natural and reasonable

thing, was, if she was living, for her to have been in or about the house and the premises so that if the offense was even attempted to have been committed she would have known or heard of it at the time and by her mere presence if not otherwise have prevented it. As a further illustration of this, the appellant had the State to admit that Essie Moore, one of the prosecutrix' sisters, had been duly subpoenaed to attend the trial of this case and that she was not present and in attendance thereon; that she had been present at the former trials, in Scurry and Haskell Counties, of other parties charged with rape upon this same girl. Evidently this was for the purpose of having the jury to consider, and it was doubtless commented upon by appellant's attorney in argument to the jury, that the State had another witness who was not present at the trial who would and doubtless could have shed some light upon the case for the State, and, by not having her present, the jury should and would consider it as a circumstance against the State. So, doubtless, if the State had not accounted for the mother of the prosecutrix at the time by showing that she was dead, the same use of her absence would have been made by appellant's attorneys and could have been made by the jury. Of all members of the family, under the circumstances, it was more necessary to account for the absence of the mother than any other member. In our opinion the evidence was admissible and the court did not commit error in permitting the proof to be made. Sweeney v. State, 65 Tex. Crim. Rep., 593, 146 S. W. Rep., 883; Subd. 8 White's C. C. P., p. 659, and cases there cited.

Doubtless, if any improper use of the testimony had been attempted by the State in argument before the jury, or otherwise, the court, with, or perhaps without, any objection, would have stopped and prevented this. Neither the bill nor record shows that any improper use was attempted of it, nor is it shown that it in any way inflamed the minds of the jury or prejudiced the rights of appellant. "Even the admission of illegal testimony will not constitute reversible error, unless some injury is shown or reasonably made to appear." Hooper v. State, 29 Texas Crim. App., 614; Coyle v. State, 31 Texas Crim. Rep., 604; Tweedle v. State, 29 Texas Crim. App., 586.

By another bill it is shown that the court limited the defendant to three witnesses for the purpose of proving that the reputation of prosecutrix in the community in which she lived, was bad for virtue and chastity, he offering to place ten additional witnesses on the stand to make that proof; that the State's counsel contended before the court in the presence of the jury that such evidence was no defense, because the prosecutrix had already stated that she had other acts of sexual intercourse, which position of the State's counsel was sustained by the court. The court, in allowing this bill, qualified it by stating that he permitted four witnesses to the general reputation of the prosecutrix to be placed on the stand, one failing to qualify; that the court thought this sufficient, in view of the fact that prosecutrix admitted that she

had carnal intercourse with four different men before this act with appellant. This shows no reversible error by the court. The only purpose for which such testimony is admissible in a rape case is where the alleged raped person is a woman more than fifteen years of age at the time, and solely for the purpose of consideration by the jury to determine whether or not she consented to the act. Our statute on the subject makes it rape for a man to have sexual intercourse with a girl under fifteen years of age with her express consent, and the decisions hold that even where she has solicited and brought about the act. P. C. Art. 1063; Robertson v. State, 51 Texas Crim. Rep., 494, and many other cases might be cited but we deem it unnecessary. So that the evidence in this case that the reputation of the prosecutrix was that of a lewd person, when it is conclusively shown that she was under fifteen years of age at the time the act occurred, was not admissible for the purpose of affecting her credibility, for even if it was, it was a conceded fact and not contested by the State,—in fact, apparently asserted by the State, that she was this character of woman, and the additional evidence of other witnesses could not have made the fact clearer or more certain. Hence, in any event, the court did not err in this particular.

The only other question necessary to discuss and decide is what is raised by the third bill of exceptions. We quote that in full, omitting solely, the style of the case and court, at the head, and the signature of the judge at the end. It is:

"Be it remembered that on this the 30th day of March, A. D. 1912, the defendant in the above entitled and numbered cause presented to this court, his bill of exceptions No. three, which, in the opinion of the court, not being a correct bill and not fairly presenting the matters therein set forth, the court herewith prepares and files this bill of exceptions, setting forth matters and things as they occurred, in lieu of said bill of exceptions No. three presented to him by the defendant as aforesaid,—the court bill of exceptions being as follows: Be it remembered that on the trial of the above styled and numbered cause in said court on the 7th and 8th days of March, A. D. 1912, the following proceedings were had, to-wit: On said 8th day of March, A. D. 1912, while the defendant's witness, H. P. Wellborn, was on the stand, counsel for the defendant, M. E. Rosser, Esq., propounded to said witness in substance the following question: 'Were you present at Haskel, Texas, in December, 1911, at the trial of Charley Jones for the offense of rape on the prosecutrix, Etta Moore, in which he was acquitted?' To which counsel for the State objected and made the remark 'that if counsel for the defendant is ignorant of the law he did not wish him to be fined,' and ask that he be required to stay within the law,—and the court sustained the objection of the counsel for the State to said question, for the reason that in the trial of the State of Texas vs. Charley Jones, tried at Haskell, Texas, in which the said Charley Jones was tried for rape upon the prosecutrix in this case,

the said Charley Jones was acquitted. There were four several indictments presented in the District Court of Scurry County, Texas, charging different parties with rape upon said prosecutrix, Etta Moore, all charged to have been by different persons and on different occasions, one of the defendants under said indictment being the said Charley Jones, and one being Knox Kearse, the defendant in this case,—and the said cases having no relation to each other, and the court being of the opinion that counsel for the defense in this case was merely trying to get before the jury the fact that in the trial of the case of the State of Texas versus Charley Jones at Haskell for rape upon the said prosecuting witness in this case, that the said Charley Jones was acquitted and that the same was not admissible for any purpose and shed no light upon the facts in this case and had no bearing upon the facts in this case,—sustained said objection of the State.

"That after the court had sustained said objection of the State, a colloquy ensued between counsel for the defense and counsel for the State, and counsel for the defense, there being four of them, insisted on asking the question again, whereupon the court remarked that if counsel asked the question again that he would fine him in the sum of fifty dollars. The counsel for the defense then asked the court to withdraw the jury that he might make his objections and take his exceptions to the ruling of the court as aforesaid, which the court declined to do as such matters would necessarily delay the trial, the court at that time stating to counsel for the defense that they could put any objections they wanted to in their bill of exceptions; and afterward, during an intermission or recess in the trial of the case, the court told L. H. McCrea, one of the counsel for the defense, that he could put any objection in his bill that he wished, which the said L. H. McCrea stated was all right and all that they wanted, but that he believed the testimony was admissible.

"And afterward, to-wit: at Snyder, Texas, when the said bill of exceptions of the defendant was presented to the court by Hardy Boyd, one of the counsel for the defense, the court then told the said Hardy Boyd that he could not approve the said bill of exceptions in the shape it was in, or the form in which he had it, and refused to approve same, but that if he would prepare same and put in any objections to the ruling of the court that he wished to in said case, he could do so, and that he could set out any objections that he wished to the ruling of the court, which said counsel declined to do.

"Thereupon, the court refused to approve said bill of exceptions and herewith filed this his bill of exceptions as the true and correct bill of exceptions in this case, and the same is ordered filed by the District Clerk of Fisher County, Texas, as part of the record in this cause."

On oral argument before this court in the submission of this case, it was stated by appellant's counsel, as we understood him, that the court refused to permit appellant to state what he wanted to *prove*

by this witness Wellborn, which was the testimony of the prosecutrix in the trial of the Charley Jones case, which had occurred prior to this trial. It is due to the attorney who made this statement in oral argument, to state he did not represent appellant in the court below and doubtless was not present and did not hear what then occurred.

It is and must necessarily be, the law that this court can look only to the authenticated record before it in considering any case on appeal, or any question raised or presented therein. We can not under any circumstances look to the oral assertions of appellants or their attorneys in oral argument before this court. If this was not true this court would in many cases, be flooded by oral statements of attorneys and the parties for both sides of what occurred and what didn't occur, and what was said and what was not said in the trial court. If such were the case this court would be converted into a trial court and have witnesses summoned, hear testimony and pass upon the weight to be given thereto and the credibility of the witnesses. And it would not be a Court of Appeals, as it exclusively is, and so fixed by the law.

We do not mean to be understood to imply a lack of faith in such statements by counsel in this case or any other. We are merely discussing what this court is confined to in considering the cases on appeal before it, and questions raised and presented by the record therein. The only reference to this matter, in any ground of the motion for new trial, is the following:

"7. The court erred upon the trial of this cause wherein the defendant had placed the witness, H. P. Wellborn, on the stand as a witness in his behalf when letting counsel, M. E. Rosser, propound to witness the following question: 'Were you present at Haskell, Texas, on December, 1911, and heard the trial of Charlie Jones for the offense of rape with the prosecutrix, Etta Moore, *in which he was acquitted*,' in which private prosecutor, C. P. Woodruff, objected in substance, 'that if counsel for the defendant is ignorant of the law, we do not wish him fined, otherwise we ask the court to fine him and which the court remarked and reprimanded counsel, that if such a question was propounded again, he would fine counsel $50, and whereupon co-counsel, for defendant, L. H. McCrea, endeavored to present to the court the *theory upon which said evidence would be admissible* and in which the court refused to hear, and ordered counsel to be seated, which remarks and action of the court were calculated to mislead the jury in believing that the court might be biased or leaning to the State and to give undue prominence to the remarks of private prosecutor, and to belittle the attorneys for the defendant in the eyes of the jury, as shown by bill of exceptions number 3, filed in the records of this cause."

As we understood appellant's counsel in oral argument, he contended that the court below refused to permit appellant's attorney to tell the court at the time what *they expected to prove* by the witness Welborn as to what the prosecuting witness, Etta Moore, had testified on the

trial of the Charley Jones case. This bill does not so state and nowhere so intimates, and neither does the motion for new trial. Neither is it anywhere so made to appear either directly or indirectly by the record elsewhere, or anywhere. The bill expressly states that when the *question* was asked and the court sustained the objection thereto, that the appellant's attorney attempted to *ask* it again and the court refused to even permit them to do that. The bill then shows that the appellant's attorneys asked the court to withdraw the jury,—not that he might state what the testimony he *expected to prove would be*, but "that he might make his *objection and take his exceptions* to the ruling of the court." That the court declined to do this, then stating to the counsel that they could put *any objections* which they wanted to in their bill of exceptions and that afterwards, during an intermission or recess of the trial, the court told one of appellant's counsel that he could put *any objection* in his bill that he wished and that the counsel stated in reply that it "was all right" and all they wanted; that again, when another one of appellant's counsel presented his bill covering this matter to him, he was informed by the court that he could not approve it in the shape it was and refused to approve it, "but that if he would prepare same and put in *any objection* to the ruling of the court that he wished to in said case, he could do so and that he could set up *any objections* that he wished, to the ruling of the court, which said counsel declined to do. Thereupon, the court prepared this bill and filed it in lieu of the one which had been presented to him instead of the incorrect one which had been presented to him and which he refused. Again, we find in the record, statement of facts, that the official court stenographer who took down on the trial all of the testimony in the said Charley Jones case, was present on this trial and introduced by appellant testified that he was such official stenographer; that he did, as such, take down all the testimony in the Jones case and had his notes with him, produced and identified them and then, without any objection whatever, by the State, reproduced such part of the testimony of Etta Moore in the Jones case, and read it in this, at the instance of the appellant herein as he called for, reading it in full by question and answer.

So that, we conclude from all this and the record, as a whole, that appellant's attorneys must have been in error in contending orally before this court that the lower court refused to permit appellant to tell what he expected *to prove* by the witness Welborn as to what said State's witness, Etta Moore, testified on the trial of the Charley Jones case. But, instead, that what appellant's attorneys sought to get before the jury in putting Welborn on the stand, was to inject into the evidence, as shown by his questions and the attempted repetition thereof, *that Jones was acquitted by the jury in this case.* That such could be done, no one could contend, and the court was correct in suppressing the injection of such testimony in this case, even if some temper and threat of a fine for so doing was shown and made.

Article 744, Code Criminal Procedure, prescribes that on the trial of any criminal action, the defendant, by himself or counsel, may tender his bill of exceptions to any decisions, opinion, order or charge of the court or other proceedings in the case; and the judge shall sign such bill of exceptions, under the rules prescribed in civil suits, in order that such decision, opinion, order or charge may be revised upon appeal. There is no other statutory provision in our criminal codes on this subject. So that we go to the civil code to determine what shall be done in cases arising as did in this case. Revised Statutes, Articles 2058 (1360), prescribes: "Whenever, in the progress of a cause, either party is dissatisfied with any ruling, opinion, or other action of the court, he may except thereto at the time the same is made, or announced, and at his request, time shall be given to embody such exception in a written bill." Revised Statutes, Article 2063 (1365) makes it the duty of the party taking any such bill to reduce it to writing and present it to the judge for his allowance and signature. The next article requires the judge to submit such bill to the adverse party or his counsel, if in attendance on the court, and if found to be correct to sign it without delay and file it with the clerk. Then the succeeding articles of the statute are as follows:

"Article 2065 (1367). *If found incorrect.* Should the judge find such bill of exceptions to be incorrect, he shall suggest to the party, or his counsel who drew it, such corrections as he may deem necessary therein; and if they are agreed to, he shall make such corrections and sign the same and file it with the clerk.

"Article 2066 (1368). *On disagreement, judge to make out bill, etc.*— Should the party not agree to such corrections, the judge shall return the bill of exceptions to him with his refusal indorsed thereon, and shall make out and sign and file with the clerk such a bill of exceptions as will, in his opinion, present the ruling of the court in that behalf as it actually occurred.

"Article 2067 (1369). *Bystanders bill, how obtained.* Should the party be dissatisfied with the bill of exceptions filed by the judge, as provided in the preceding article, he may, upon procuring the signatures of three respectable bystanders, citizens of this state, attesting the correctness of the bill of exceptions as presented by him, have the same filed as part of the record of the cause; and the truth of the matter in reference thereto may be controverted and maintained by affidavits, not exceeding five in number on each side, to be filed with the papers of the cause, within ten days after the filing of such bill of exceptions, and to be considered as a part of the record relating thereto. When the court refuses to sign a correct bill of exceptions, such proceedings may be had in the court of civil appeals, as is presscribed in article 1607."

In our opinion the said bill No. 3, above quoted shows that the judge substantially, if not literally, complied with this law and his duty. The appellant, in no way shown by the record, contested by affidavit

or otherwise, the correctness of the judge's bill, or of any of the facts and circumstances stated by him as having occurred. But on the contrary, as we take it, his counsel were satisfied with the bill as prepared by the judge. Under the circumstances, it will not meet the question to say that the by-standers would not have known, and could not have known what they expected to prove by the witness. They, the attorneys, could, at least, have made their affidavits of what this was, if it was other or different from what the judge states in the bill.

Again, Revised Statutes, Article 1607 (1014), the statute referred to in article 2067, above quoted, expressly states: ''And the court (appellate court) shall admit as part of the record to be examined by them in the trial of a cause, every bill of exceptions not signed by the judge trying the cause below, upon its appearing to the satisfaction of the court (appellate court) that the facts are fairly stated therein; that said bill was prepared in accordance with the law governing the preparation of such bills and that the judge trying the cause refused to sign the same; and the truth of any such such bill of exceptions shall be determined by the court (appellate court) on the copies of the affidavits required by law to be made in such case, such copies to be copied in, and to form a part of the record transmitted to the Court of Civil Appeals (or Criminal Appeals).'' The record nowhere and in no way shows that any such affidavit was filed in the lower court and none such is contained in the record before us.

It has always been held by this and the civil courts, that as the statute requires, it would be proper for the court, when an objection is made and a bill of exceptions is taken, to stop the trial a sufficient length of time to then and there prepare, sign, and approve such bill. The general practice, however, in the trial courts is not to do this. But it has also always been held that even when this is not done and the party is afterwards given his bill in full that the mere fact that the court did not suspend the trial and give it to him when first taken, would not be reversible error, and no case has been reversed, so far as we know, because the court did not stop the trial and then and there give the party a bill of exceptions.

We, therefore, hold, as this matter is presented to us, that the appellant has no cause of complaint that would justify this court to reverse this cause. The judgment is, therefore, affirmed.

*Affirmed.*

[Rehearing denied December 18, 1912.—Reporter.]