MARCELINO GALAVIZ V. THE STATE.

*No. 4569.   Decided October 31, 1917.*

Rehearing denied November 28, 1917.

**1.—Rape—Penetration—Insufficiency of the Evidence—Rule Stated.**

Penetration is an element of rape and must be proved beyond a reasonable doubt, though such penetration need not be of any particular depth. Following

Johson v. State, 27 Texas Crim App., 163. And where, in the instant case, the evidence as to penetration was insufficient to support the verdict the judgment must be reversed and the cause remanded. Following Draper v. State, 57 S. W. Rep., 556, and other cases. Prendergast, Judge, dissenting.

**2.—Same—Bills of Exception—Filing.**

. Where the bills of exception were filed too late they can not be considered on appeal.

**3.—Same—Statement of Facts—Agreed Statement.**

The statutes relating to the preparation of statements of fact by the court stenographer in express terms declares that it is not to annul the privilege accorded by article 2068, Rev. Civ. Stats., to prepare an agreed statement of facts, signed by the attorneys and approved by the judge. Following Railway v. Prasak, 170 S. W. Rep., 859, and other cases.

Appeal from the District Court of Bee. Tried below before the Hon. F. G. Chambliss.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*R. L. Cox* and *W. G. Gayle,* for appellant.—On question of agreed statement of fact: Tyler v. Sowders et al., 172 S. W. Rep., 205, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of statement of facts: Lagrone v. State, 61 Texas Crim. Rep., 170; Morris v. State, 63 id., 375.

MORROW, Judge.—Appellant's conviction was for rape, and punishment fixed at five years confinement in the penitentiary.

The State's theory is that the offense was committed against a child nine years of age. Appellant had been living some years with the mother of the child, first in Mexico and later in Bee County. There had been no marriage, but they had lived together as husband and wife. This woman testified that she had thought of quitting appellant, and said: "I had made up my mind of ridding myself of him; I had thought of going with my home people, living at Granger, Texas. I have never written to my people from here. I never thought of doing anything that would put my husband in trouble in order to get shed of him." Appellant at the time of the alleged offense was clearing land for Mr. Young. He, with his family and a man by the name of Miguel Verdines, were occupying a house on Mr. Young's premises, and had been doing so for a short time. The little girl, who could not speak English, testified through an interpreter. There was evidence that a shallow hole had been dug in the ground near where appellant was grubbing land which appeared to have been recently made, though by whom is not shown. The little girl claimed that she was at the place, or near the place where appellant was at work and that he threat-

ened to kill her and put her in the hole if she did not do what he wanted. We quote from her as follows: "He first put his finger in me and pulled down his pants, but he didn't put anything in me, but he didn't put his paloma in me. No, sir; he didn't put his paloma in me, only outside." At this stage the district attorney asked some leading questions with permission of the court, endeavoring to show by witness that there was penetration. Responding to the leading question, she said: "No, he only took my pantlets off. Yes, he brought me up to him, but he put his paloma (Mexican word for penis) on the outside and not in." Question: "Didn't he put it in you and hurt you?" Witness: "No." The district attorney suggested that someone had been tampering with the witness, and had the jury withdrawn in order that he might examine the witness in the presence of the court in the absence of the jury. Whereupon she was asked who had talked to her and told her to say that appellant did not put his penis in her. Replying to this question, she said: "No, sir; only outside. Yes, sir; only on the outside." The district attorney then asked why she had told him in the grand jury room that he had put his paloma in her. She replied, "I told you also that he just put that on the outside, and not inside at all." He put his paloma against her little thing. Didn't put it in her, only outside; up against her. The district attorney, with the permission of the court, over the objections of appellant, took the witness and the interpreter outside, and out of the presence and hearing of the defendant and his counsel. She returned and testified: "Yes, sir; he took me and pulled down my pantlets. Yes, sir; his paloma entered just a little of the lips of her privates. He told me that if I said it that he would kill me and bury me in that hole. Anyway, I was going to tell mama. Yes, sir; I told her, told her right of way, just as soon as my mama come there. She come out there to bring the breakfast." On cross-examination she said: "He put his finger in me. I called to my mother, and my mother didn't hear me. He pulled down his pants and he put his legs over on top of mine. He put his hand on my mouth so I couldn't call, then he brought me up against him and opened my legs and put his finger in there and put his paloma a little bit in there. I saw his paloma. He was inside, between my legs. He never did put it in there, only on the outside." She further said: "No, he did not hurt me. When he put his finger in there it hurt me. No, he didn't put his paloma in there, only on the outside. No, it didn't hurt me; yes, it did hurt me." On redirect examination this question was asked: "Now, it was when he just put a little of his penis in there that it hurt her?" Answer: "Yes." On recross-examination she said, in answer to the following question: "Didn't you say a while ago that his paloma didn't enter at all, that it was on the outside of you?" Answer: "Yes, that is the truth; I believe that he didn't put it in, only outside." The child's mother accused appellant of the offense at the time she took his breakfast to him. Officers were called for and arrested appellant, who made no effort to escape. One

physician examined the little girl on the same day and said that the hymen was lacerated and torn but no marks of violence, no bruises. The hymen had recently been torn and lacerated. We quote from him as follows: "From the examination I made, and from my knowledge as a physician, I would not attempt to say that this little girl had been penetrated. The hymen being broken was no evidence of penetration. The laceration denotes that there had been an entrance to this part that was torn. Something had been inserted. It could have been made with the finger, a piece of metal or a stick." He claimed that the laceration of the hymen was no evidence of rape. He saw no blood. That there was a sero-sanguineous discharge on her drawers, but saw no evidence of violence on her person other than already stated. There was very little signs; no blood; nothing but the sero-sanguineous discharge. Another doctor who later examined the child said that he found the hymen practically normal. No laceration or anything; that the hymen was intact, showing no evidence of laceration; that it was a peculiar type, which he described as follows: "This little girl has the fimbrame hymen, that is, one with notches, and after a certain time it would be possible, in many cases, unless a thorough examination is made, to mistake these notches for artificial abrasions. In a fimbrame or notchy hymen, quite often the mistake has been made of thinking that this was a ravisher's abrasion, instead of a natural abrasion. A fimbrame or notchy hymen may be taken for a lacerated hymen, and great care should be taken in the examination of a hymen for laceration." He stated that the hymen could be lacerated from many causes. He said that the laceration of the hymen would cause hemorrhage. There was an absence of evidence of hemorrhage. Appellant testified and denied the offense. He admitted that the little girl was out where he was at work and that he had given her a switching on account of some disobedience. The other occupant of the house was working nearby but knew nothing of the occurrence.

Penetration is an element of rape and must be proved beyond a reasonable doubt, though such penetration need not be of any particular depth. Johnson v. State, 27 Texas Crim. App., 163; Rodgers v. State, 30 Texas Crim. App., 510; P. C., art. 1067; Word v. State, 12 Texas Crim. App., 183; Wilson v. State, 17 Texas Crim. App., 537; Duckworth v. State, 42 Texas Crim. App., 74. From Blair v. State, 56 S. W. Rep., 622, we quote as follows: "Appellant was convicted for rape upon a female under the age of fifteen years, and his punishment assessed at confinement in the State penitentiary for a term of five years. In the view we take of this case, we only deem it necessary to consider one question. The testimony of the prosecutrix in the first instance is in favor of the theory of the State. Then immediately she denies in toto the truthfulness of this statement, and states that appellant did not have carnal intercourse with her at any time. This leaves the record before us in such condition that we can not permit the verdict to stand without other proof on the question of penetration, which is an

absolutely essential requisite to all prosecutions for rape. See art. 637, Code Cr. Proc.; Davis v. State, 43 Texas, 189." See also Draper v. State, 57 S. W. Rep., 656.

Because the evidence is not sufficient to support the verdict, the judgment is reversed and the cause remanded.

The bills of exception can not be considered because filed too late. The evidence we regard as insufficient to prove penetration beyond a reasonable doubt. As a consequence the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, dissenting.

### ON REHEARING.

#### November 28, 1917.

MORROW, JUDGE.—The State on motion seeks to set aside a reversal on the ground that no duplicate copy of the statement of facts was filed in the court below.

A statement of facts, with an agreement to its correctness signed by attorneys for the State and appellant and bearing the approval and signature of the district judge, was filed in due time in the court below and in this court. It is in full compliance with article 2068 (R. S.), authorizing parties to agree to a written statement of facts which, when approved by the trial judge and filed in the requisite time, becomes a statement of facts. The statute relating to the preparation of statements of facts by the court stenographer in express terms declares that it is not to annul the privilege accorded by article 2068 to prepare an agreed statement of facts as above indicated by statute, article 2072. Railway Co. v. Prazak, 170 S. W. Rep., 859; McLane v. Hayden, 178 S. W. Rep., 1197; Tyler v. Sowders, 172 S. W. Rep., 205.

The motion for rehearing is overruled.

*Overruled.*

#### December 6, 1917.

PRENDERGAST, JUDGE (dissenting).—The opinion of Judge Morrow herein does not give all of the pertinent testimony going to show the rape by appellant of the little girl. It was clearly sufficient to show penetration by appellant of the lips of her private parts. This only was essential to be proven. It was not essential to prove that his male organ entered the vagina of the little girl. This was the effect of her testimony and the jury unquestionably from the evidence so found. The fact as testified to by her that appellant did not put his male organ "in me, only outside," was no contradiction of her testimony where she swore repeatedly that his organ did enter the lips of her privates. But even if she had contradicted herself on that point, that was a question exclusively for the jury.

The statute is clear and plain that "the *jury* are the *exclusive judges*

of the facts in every criminal cause" (art. 734, C. C. P.), and "the *jury*, in all cases, are the *exclusive judges* of the *facts proved*, and of the *weight to be given to the testimony."* (Art. 786, C. C. P.) In no case are the judges of this court authorized to pass on the credibility of the witnesses. By the statute giving the *jury* this *exclusive* right the *judges* of this court are *excluded* from exercising any such right.

The question of where a raped girl, as in this case, contradicted herself, and what effect that would have in law as to the sufficiency of her testimony when believed by the jury was discussed in Kearse v. State, 68 Texas Crim. Rep., 635, and in a large number of cases both before and since then.

I quote from the said Kearse case, which was the unanimous opinion of this court, as follows: "Appellant contends that the evidence is insufficient to sustain the verdict. The contention is based largely on the fact that the girl alleged to have been raped by appellant contradicted herself in her testimony, and was contradicted by the testimony of other witnesses and by some circumstances. There is hardly any contested case that comes to this court but what there are contradictions in the testimony, and frequently a principal witness may contradict himself in material matters. In such cases when it is contended that the evidence is insufficient to sustain the verdict this court can not legally take the place of the jury and determine whether or not it will believe any witness, or witnesses, and from all of the testimony, as put down on paper and sent to this court, it would have found a different verdict from that of the jury and if so reverse the case on that account. The only question this court can determine is whether there is sufficient evidence if believed by the jury to sustain the conviction. . . . Our law expressly provides that the jury in all cases are the exclusive judges of the facts proved and of the weight to be given to the testimony. The court, therefore, can not take that question from the jury without usurping authority that was never given or intended to be given to it. The jury, in a felony case, is made up of twelve fair, disinterested, impartial, unprejudiced, unbiased and competent jurors, selected from different portions of the county, each one of whom hears all the witnesses, looks them in the face when testifying, observes their manner and the method of their examination by the respective attorneys, then hears the argument of the attorneys for each side, one side undertaking to break down the testimony of the witness and calling attention to every contradiction in the testimony of such witness and the contradiction by others of him, the other explaining such matters and seeking to sustain such witness, then hear and take with them in their retirement the charge of the court; then the twelve men discuss and consider in private between themselves all such matters, and after weighing it all and all the arguments against it and in support of it, come to the conclusion that the testimony of a certain witness or witnesses, although contradicted and although there are contradictions in the testimony of such witness, that

it is true and they believe it. The jury is made up of men of different. ages, from young to comparatively old men, and they pursue different occupations and businesses. With all these surroundings they are much more competent to arrive at the truth than are the judges of this court, who must look solely to the testimony as written down on paper. It can not portray the manner, the looks and the deportment of the witness, nor the manner of his examination and cross-examination by the attorneys. Besides this, the presiding judge hears and sees and observes all that the jury does in the trial of the case, and he then sustains the verdict of the jury. Therefore, when the evidence taken in its favorable light sustains the verdict this court can not legally set it aside."

The judgment in this case should have been affirmed.